MODERN LAUNDRY, et al. *v.* HARRELL

No. 42599          March 4, 1963          150 So. 2d 409

*Welch, Gibbes & Graves,* Laurel, for appellants.

*Paul G. Swartzfager, William H. Odom,* Laurel, for appellee and cross-appellant.

GILLESPIE, J.

Appellee filed claim for workmen's compensation benefits. The attorney-referee denied the claim. Appellee appealed to the full Commission where the claim was again denied. On appeal to the circuit court, the order of the Commission was reversed and appellee was awarded benefits for temporary partial disability.

Appellee worked for Modern Laundry since 1922 and was manager from 1933 until the laundry went out of business in May 1956. In addition to his duties as manager, he maintained the machinery and did other manual work. He was required to be on his feet a large part of the time. About January 15, 1955, appellee twisted his foot and fractured a bone while fighting a minor fire in the laundry. A few days after this accident he was fitted with a brace in his shoe to serve as a splint. He continued to work with the aid of a cane, although it was painful for him to walk. In about ten weeks the fracture in his foot was healed and he had no further disability from the fracture. He made a report to Modern Laundry's compensation insurance carrier of the accident, but nothing further was done and no claim

for compensation was ever made based on said accident. Appellee continued to work as manager of the laundry until May 15, 1956, when the laundry closed. He sought other employment without success.

In June 1957, appellee filed Form B-5 with the Commission. This was the first time appellee claimed compensation benefits. On this form appellee gave as the nature of the accident, "Bony spurs on both feet." On the accompanying Form B-11, he gave the date of the injury as May 15, 1956.

Appellee testified that he had trouble with his feet prior to the 1955 accident when he fractured a bone in his right foot; that after the fracture he walked with the aid of a cane for a period of time and suffered considerable pain when walking; that he continued to work until the laundry closed on May 15, 1956, but that his feet were gradually getting worse. He said both feet hurt, one about the same as the other. He learned that he had bony spurs on his heels when X-rays were made in connection with the January 1955 fracture of his foot. His job at the laundry required standing and walking on concrete floors.

Dr. William L. Bass, general surgeon and physician, testified that the formation of spurs on the heel is a slow process and, while appellee probably had a pre-existing condition in that respect, he was of the opinion that the fracture probably aggravated this condition to some extent and made the pain worse. He was of the opinion that standing on concrete floors for long hours also aggravated the condition of appellee's feet, and that appellee was disabled from doing the kind of work he was doing at the laundry, but that he could do desk work. He said the fracture completely healed and there is no resulting disability from that injury. He classified the bony spurs on appellee's heels as a disease.

Dr. James Clark Bass, Jr., an orthopedic surgeon, has had considerable experience in treating and remov-

ing by operation bony spurs on the heel. He said the bony spur itself is not the seat of pain but the pain results from tension on the plantar fascia, the tough, fiberous tissue on the bottom of the foot. The development of bony spurs is a slow phenomena. When he examined appellee, the latter gave a history of his feet hurting for five or six years. It was his opinion that appellee's work did not have anything to do with the formation of bony spurs on the heel, nor did it make any difference what kind of surface he walked on.

Dr. Edward A. Attix, an orthopedic surgeon, testified to substantially the same facts and opinions as Dr. James Clark Bass, Jr. He was of the opinion that appellee's employment was not a contributing factor in the development of the spurs or tension on the bottom of his feet, and that his work aggravated his condition only as to the amount of pain at the moment.

The circuit court held that the fracture of the foot, together with the aggravation of a pre-existing disease, was compensible. The court awarded appellee fifty percent disability for the period January 15, 1955 through April 3, 1955, and twenty-five percent disability for a nine-month period beginning April 3, 1955.

(Hn 1) The circuit court erred in reversing the Commission's order. It will be noted that appellant sustained the fracture of his foot on January 15, 1955. He made no claim for compensation until Forms B-5 and B-11 were filed with the Commission on June 25, 1957, more than two years later. The claim is barred by Sec. 6998-18, Miss. Code of 1942, which is in part as follows:

"Regardless of whether notice was received, if no payment of compensation (other than medical treatment or burial expense) is made, and no application for benefits filed with the Commission within two years from the date of the injury or death, the right to compensation therefor shall be barred." Thyer Manufacturing

Company v. Keys, 235 Miss. 229, 108 So. 2d 876; Dunn's Workmen's Compensation, 1963 Cum. Supp., Sec. 155.

(Hn 2, 3) The Commission's order denying compensation was supported by substantial evidence. The testimony of the two orthopedic surgeons justified a finding that the work activities of appellee did not contribute to or aggravate the development of his foot trouble, and that the development of the bony spurs and pain from tension in his feet was the gradual progress of disease.

Reversed and order of Commission reinstated; affirmed on cross-appeal.

*Lee, P. J., and Ethridge, McElroy and Rodgers, JJ.,* concur.