233 So.2d 811 (1970)
TABOR MOTOR COMPANY
v.
Sam GARRARD.
No. 45728.
Supreme Court of Mississippi.
April 6, 1970.
*812 Mitchell, McNutt & Bush, Wade H. Lagrone, Tupelo, for appellant.
Pyles & Tucker, Jackson, William Liston, Winona, for appellee.
ETHRIDGE, Chief Justice:
This case involves a workmen's compensation claim for disability benefits, a statute limiting the period for filing a claim to two years after the "injury," and a latent injury. We hold that the claim period runs from the time compensable injury becomes reasonably apparent, not from the date of the accident only.
Sam Garrard, appellee, filed a claim before the Workmen's Compensation Commission for disability benefits. The attorney-referee denied the claim, and his order was upheld by the Commission, on the ground that the claim was barred by the two-year statute of limitations, which provides:
* * *. Regardless of whether notice was received, if no payment of compensation (other than medical treatment or burial expense) is made, and no application for benefits filed with the commission within two years from the date of the injury or death, the right to compensation therefor shall be barred. (Miss. Code 1942 Ann. § 6998-18(a) (1952); Miss. Laws 1948, Ch. 354, § 12.)
The Circuit Court of Grenada County reversed the Commission's order and held that the claim was not barred by the two-year statute; and that the nature, seriousness, and probable compensable character of the noncompensable accident on October 7, 1964, could not have been reasonably determined by Garrard until a later date, well within two years.
Sam Garrard, born in 1913, began working in 1959 for Tabor Motor Company in Winona as a body repair man. He later became foreman, and from 1959 until October 7, 1964, he lost no time from work. On the latter date, he was welding under an automobile, while lying on the ground, when a supposed hot spark (which later was found to be a piece of slag) from the cutting torch fell in his left ear. The employer sent Garrard to Dr. Middleton, the company physician, who treated him for the accident and did not regard it as of a serious nature. Three days later, on October 10, Garrard returned to work at Tabor Motor Company and worked regularly until September 15, 1965.
In the interim, on October 17, 1964, Garrard returned to Dr. Middleton, who recommended that he see Dr. Nadeau, an ear *813 specialist in Grenada. On October 20, Nadeau examined Garrard, found a perforated left ear drum, and recommended an operation. Dr. Middleton discharged Garrard as cured on October 26, 1964, but saw him occasionally thereafter although he did not anticipate that the patient would suffer any permanent disability as the result of the 1964 accident.
On December 11, 1964, Garrard went to see Dr. Nadeau, complaining of drainage problems with his ear. Nadeau did not consider any treatment warranted at that time and was of the opinion that Garrard could return to work.
On January 22, 1965, Garrard was hospitalized in Winona with pneumonia, under the care of Dr. Middleton, who said that Garrard also complained of headaches and dizziness. In February, March and July 1965, Garrard visited Dr. Middleton and on September 15 and November 8, 1965, he was hospitalized twice for treatment of hernia. Middleton saw him again on October 13, 1965.
On January 28, 1966, Dr. Nadeau treated claimant for an ear infection. On January 31, 1966, Garrard was examined again by Dr. Middleton, who stated that not until that time did he connect the claimant's difficulties with his earlier ear accident, and that he then told claimant that he thought there was a connection between his present condition and the 1964 accident. Drs. Nadeau and Middleton referred Garrard to Dr. Shea of Memphis, a specialist in otology.
On March 14, 1966, Dr. Shea, during an operation on Garrard's left middle ear, found a piece of slag and removed it. He advised claimant that the slag, which apparently had fallen into his left ear on October 7, 1964, was causing his dizziness and related physical problems. This was the first time that Garrard had any knowledge that he was suffering an injury as a result of the 1964 accident. Dr. Shea said that the slag burned a hole in the ear drum and penetrated the middle ear out of the eyesight of examining physicians.
Garrard returned to work on May 11, 1966, at Tabor Motor Company and continued working until October 11, 1966, when he suffered a blackout "spell" on the job. He returned to work again on November 11, but four days later Dr. Middleton put him in the hospital and transferred him shortly thereafter to a Memphis hospital for further treatment by Dr. Shea. Garrard has not worked since November 15, 1966.
Garrard was examined and treated for his symptoms of dizziness and headaches after October 7, 1964, by three doctors, none of whom told him that his problem was caused by or related to the 1964 accident, until Dr. Middleton reached that conclusion on his examination of January 31, 1966. Garrard had no actual knowledge of the connection until after Dr. Shea's operation of March 14, 1966.
Garrard applied for workmen's compensation benefits on April 4, 1967. Although appellant provided Garrard with some medical benefits, he has received no weekly compensation benefits.
Dr. Shea's deposition taken on November 29, 1967, was based on an examination of Garrard on October 6, 1967. He found that Garrard was in a "very bad condition" with an exacerbation of his prior condition, endolymphatic hydrops, which involves an excessive amount of fluid in the inner ear with a resulting increased pressure. Shea was reasonably certain that this condition was caused by the slag falling into the left ear and burning a hole in the ear drum, and that Garrard was totally disabled. Dr. Shea stated that Garrard was unable to do anything  he could not work or even walk by himself  and that he had no recommendations for further treatment. Shea thought that, although this condition sometimes results in spontaneous remissions, the usual result following a remission is a worsening of the condition. Unless Garrard has a remission, he is permanently disabled. Although a permanent remission is possible, *814 the probability is that he will remain in the present condition for the rest of his life.
Under the particular facts of this case, we do not think that the two-year statute of limitations has the effect of barring Garrard's claim for workmen's compensation benefits.
Dr. Middleton's report to the Workmen's Compensation Commission of November 7, 1964, stated that a spark flew in claimant's ear and burned a two-millimeter diameter area in the left ear drum, there was no permanent defect, and he had irrigated the left ear and prescribed ear drops. Although aware there was a possibility of a permanent disability, he did not anticipate it. The "earliest manifestation of complications" resulting from the accident appeared to him in his examination of January 22, 1965; however, he did not then connect the symptoms causally with the traumatic experience of 1964. The first time he told claimant that his troubles, including dizziness and blackout spells, were caused by the 1964 accident was January 31, 1966. He is of the opinion that Garrard is permanently and totally disabled.
Dr. Nadeau said that he first saw claimant on October 20, 1964, and found that he had a perforation of the left ear drum. On October 30, 1965, Dr. Nadeau made a report to the Commission in which he described the injury as "a welder's burn, left ear," stating that it was not a permanent defect, and that claimant would be able to return to work on December 12, 1965. He saw him on January 31, 1966, on which date claimant had an acute infection in the left ear, the source of which he did not identify. He prescribed an antibiotic and ear drops. He did not think the injury was disabling, and did not relate the condition to the 1964 accident.
When the slag (then unknown) fell in Garrard's inner ear on October 7, 1964, he was absent from work for only three days. No compensation is allowed for the first five days of disability, except medical benefits. Miss. Code 1942 Ann. § 6998-06 (Supp. 1968). Code section 6998-18 dates the two-year limitation period from the date of "injury," not from the accident. The Mississippi statute is based on an injury (of accidental character). In 1964 Garrard received what appeared to be a relatively minor injury. Because of the five-day exclusion provision, he received no weekly compensation benefits whatever. Although he had some discomfort and dizziness in succeeding months, those factors were noncompensable. The statute does not date the start of the limitation period from the date of accident. None of the doctors who treated Garrard during the intervening months associated his symptoms with any major disability to the ear until January 31, 1966, when Dr. Middleton said that he began to suspect that claimant's difficulties, dizziness and blacking out, were associated with his earlier ear accident, and when he apprised claimant of his ideas about this connection. However, not until Dr. Shea operated on claimant's left ear on March 14, 1966, did any of the doctors locate the piece of slag in Garrard's ear. Garrard filed his claim on April 4, 1967, well within a two-year period from the January 1966 examination by Dr. Middleton and the March 1966 surgery by Dr. Shea. On the present record it is undisputed that Garrard is totally and permanently disabled from the 1964 accident.
Under these circumstances, we do not think that the time for a claim to be filed with the Commission began to run until Garrard, as a reasonable man, should have recognized the nature, seriousness, and probable compensable character of his injury. In the interim period he excusably remained ignorant of his right to make a claim. In short, the two-year limitation statute does not begin to run until by reasonable care and diligence it is discoverable and apparent that a compensable injury has been sustained. 2 Larson, Workmen's Compensation Law, § 78.41 (1969).
*815 This case involves a typical latent injury under the "injury" type of claim period statute. Larson summarizes the issue and the general interpretation of such statutes by other states in the following way:
The most troublesome problem in the entire area of notice and claim is that of the apparently trivial accident which matures into a disabling injury after the claim period has expired. A workman is struck in the eye by a metal chip, but both he and the company doctors dismiss the accident as a petty one, and of course no claim is made, since there is no present injury or disability. Eighteen months later a cataract develops as the result of the accident. If the statute bars claims filed more than one year after the "accident," the workman can never collect for the injury no matter how diligent he is: he cannot claim during the year, because no compensable injury exists; he cannot claim after the year because the statute runs from the accident.
Twenty-two states date the claim period from the "accident"; most of the rest date it from the "injury." Under the "injury" type of statute, there is now almost complete judicial agreement that the claim period runs from the time compensable injury becomes apparent. A demand six years after the accident, for a cataract which took that long to manifest itself, has been held timely under such a statute. (Larson, Workmen's Compensation Law § 78.42(a) at 262-263 (1969))
This record reflects that it was virtually impossible for Garrard to know that an apparently minor accident, not compensable under the workmen's compensation act, would later develop into a compensable injury resulting in substantial disability. It was not until Dr. Shea's operation of March 1966 that any of the several doctors who treated claimant were able to associate and recognize the source of his disability as being the 1964 accident. If the doctors could not recognize this connection, it would be unreasonable and unfair to require Garrard to do so within two years from the 1964 accident. Certainly he was under a reasonable inability to recognize any subsequent disabling condition in an earlier, latent stage.
Moreover, of additional significance in interpreting the meaning of the two-year limitation from date of "injury" in section 12 of the Act are the related provisions of section 2(9) and section 4.
Section 4 provides: "Compensation shall be payable for disability or death of an employee from injury * * * arising out of and in the course of employment * *" Miss.Code 1942 Ann. § 6998-04 (Supp. 1968) (emphasis added).
Since under section 4 compensation is payable only for "disability" resulting from "injury" which is work connected, the definition of "disability" added to section 2(9) of the act in 1960 is necessarily relevant:
"Disability" means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment, which incapacity and the extent thereof must be supported by medical findings. Miss.Code 1942 Ann. § 6998-02(9) (Supp. 1968) (emphasis added).
Accordingly, since the employer is required to pay compensation only for disability (section 4), and such disability must be supported by medical findings (section 2(9), Garrard had no compensable injury until it was reasonably apparent that he had a disability resulting from an accident arising out of and in the course of his employment. Hence the word "injury" in section 12, the two-year limitation statute, refers to a compensable injury, in which incapacity and its extent can reasonably be ascertained by medical findings.
Thyer Manufacturing Company v. Keys, 235 Miss. 229, 108 So.2d 876 (1959), presents *816 problems of interpretation. While working for Thyer Manufacturing Company, Keys was engaged in lifting a rafter when he felt a "jerk" in his back on January 28, 1955. He was off three days, returned to work the next Monday, and complained to his supervisor of having sustained an injury to his back. The company sent him to a doctor, who was also his family physician, for treatment. The doctor had him remain in bed for four days, and claimant returned to work on February 5, 1955, and continued to work for the company through that year and until November 1956, when he accepted employment with a contractor. He returned to work for the company in January 1957 and worked until the middle of February 1957. In April 1957 a doctor discovered that claimant had a ruptured disc. On May 21, 1957, he filed a claim with the Commission. The attorney-referee awarded compensation, but the Commission denied it, holding that the two-year statute applied. The circuit court reversed that decision, but this Court reinstated the Commission's order. The opinion does not indicate that Keys consulted any doctor between February 5, 1955, and March 2, 1957, although it states that he suffered with his back in the early part of 1955 and took aspirin to relieve the pain.
The decision in Keys was based upon two grounds. First, the Court quoted from the above cited statement in Larson, that the time for claim "does not begin to run until the claimant, as a reasonable man, should recognize the nature, seriousness, and probable compensable character of his injury or disease * * *" 235 Miss. at 237, 108 So.2d at 879 (emphasis in original).
The Court then said:
It was for the determination of the commission, as the trier of facts, to determine the issue as to whether or not the claimant, as a reasonable man, should have recognized the nature, seriousness and probable compensable character of his injury. (232 Miss. at 237, 108 So.2d at 879 (emphasis in original)).
Second, the Court stated that the statute dated the limitation period from the "date of the injury," instead of the accident, and the fact that claimant did not definitely ascertain the exact result of the injury until April 16, 1957, did not prevent the running of the statute of limitations. In support of that view, the opinion erroneously quoted Larson's discussion of the "accident" type of statute, in which he says that with that type of act the "obvious remedy is legislative." (235 Miss. at 237, 108 So.2d at 876).
One manifest basis of the Keys decision was that the Commission was warranted in finding that claimant as a reasonable man should have recognized the probable compensable character of his injury. To that extent, the holding in Keys is in accord with our decision in the instant case.
Modern Laundry v. Harrell, 246 Miss. 463, 150 So.2d 409 (1963), was based essentially on an affirmance of a finding of the Commission that claimant's work activities did not contribute to or aggravate the development of bony spurs on his foot. The opinion outlined in detail the testimony of three doctors on this conflicting issue, and held that the Commission had substantial evidence to so find. The opinion also referred, parenthetically, to the two-year limitation statute and the Keys case, stating, "it will be noted that appellant sustained a fracture of his foot on January 15, 1955," and that he made no claim until June 25, 1957. (246 Miss. at 467, 150 So.2d at 410). However, since Harrell was properly based upon substantial evidence adopted by the Commission, the references to the two-year statute and the Keys case were dicta.
In Childs v. Mississippi Industries for Blind, 184 So.2d 872 (Miss. 1966), the Court held only that there was substantial evidence to support the finding of the Commission that claimant's injury occurred in *817 1958, with his claim for compensation being filed in 1962. The Court said:
The attorney-referee found upon ample testimony that the injury in this case occurred or was manifest as early as May 1958. The record shows that the claimant was treated for the condition for which he now seeks compensation at that time * * * 184 So.2d at 873 (emphasis added).
In short, the injury and disability were reasonably apparent to claimant in May 1958.
These factors in Keys, Howell, and Childs substantially differentiate them from the instant case, but to the extent that they are inconsistent with our decision herein, they are hereby modified and overruled.
In summary, we hold that where latent injuries are involved, the time for filing a compensation claim under the two-year statute commences to run when it becomes reasonably discoverable that claimant has sustained a compensable injury and disability. The claim period runs from the time compensable injury becomes reasonably apparent. See also 100 C.J.S. Workmen's Compensation § 468(8) (1958); W. Malone, Louisiana Workmen's Compensation Law and Practice § 384 (Supp. 1964). Ordinarily this is an issue of fact for the Commission to determine on conflicting evidence, but in this case the evidence shows that the claim was made within the required two years.
For these reasons, the Commission erred in holding that Garrard's claim is barred by the two-year statute of limitations, and the circuit court was correct in reversing that order. Hence the judgment of the circuit court is affirmed.
Affirmed and cause remanded to Workmen's Compensation Commission for further proceedings consistent with this opinion.
All Justices concur.