BARNES, J., for the Court:
¶ 1. Johnnie Brown appeals the order of the Circuit Court of Bolivar County, which affirmed the rulings of the Mississippi Workers’ Compensation Commission (Commission) and administrative judge (AJ) that her claim was time-barred under the two-year statute of limitations set out in Mississippi Code Annotated section 71-3-35 (Rev.2011). The AJ and Commission had disagreed, however, on the date the statute began to run. The AJ found the statute of limitations began to run no later than November 2001, when Brown was *162 evaluated by a physician and diagnosed with carpal tunnel syndrome. The Commission disagreed, stating that date did not clearly establish work-related causation, and found the statute began running in January 2003, when the record more clearly established Brown’s injury as work related. On appeal, Brown argues that the statute began to run in May 2004, when test results found Brown to have carpal tunnel syndrome.
¶2. Finding no error with the circuit court’s decision, we affirm.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 3. Brown began working at the Duo-Fast[1] plant in Cleveland, Mississippi, in August 1987 as a nail equipment operator. She was an employee at the plant for eighteen years, and her maximum salary was $9.50 an hour. Her job involved racking, stacking, and packing nails into cartons, as well as running the machines that collated the nails. It is undisputed that this was repetitive-motion-type work.
¶ 4. In 1998, Brown complained to her family physician about “arthritic pain” in both hands. On November 16, 2001, she saw Dr. James Warrington, her primary-care physician, for pain in her hands. He noted that she “uses her hands a lot at work,” and diagnosed her with carpal tunnel syndrome.
¶ 5. On January 8, 2003, on referral from Dr. Warrington, Brown was examined at the Greenwood Orthopedic Clinic by Dr. Fred Sandifer II, an orthopedic surgeon, for complaints of pain and numbness in both hands, which she associated with her work at Duo-Fast. She indicated her symptoms had been present for several months and had increased in severity recently. Dr. Sandifer diagnosed her with bilateral carpal tunnel syndrome and suggested EMG nerve-conduction studies if her condition did not improve in three weeks. At that time, Brown wanted to pursue conservative treatment. Brown did not see Dr. Sandifer again for ten months.
¶ 6. In September 2003, Brown complained of hand pain and numbness at work due to repeatedly packing nails, and her complaint was documented in her personnel file. It was suggested she pack smaller nails. In November 2003, Brown returned to Dr. Sandifer with symptoms of mild carpal tunnel syndrome. He prescribed prednisone for her hands for eight days and advised her to return to him in three weeks. In December 2003, Brown saw Dr. Sandifer for her follow-up visit, stating she was much better after the prednisone treatment. He advised her to return after the first of the year if she was still having problems with her hands, and carpal tunnel release surgery would be considered.
¶ 7. In January 2004, Brown again followed-up with Dr. Sandifer with complaints of hand weakness, but she claimed her hands were not bothering her enough for surgery. He continued with conservative treatment. Brown’s symptoms of carpal tunnel syndrome persisted, and in April 2004, Dr. Sandifer ordered EMG nerve-conduction studies since her hand condition was “chronic” and “may need release.” In May 2004,[2] Dr. Ravi Pande *163 conducted the study that showed severe bilateral carpal tunnel syndrome, and he recommended carpal tunnel release.
¶8. On October 8, 2004, Brown first notified Duo-Fast that she had sustained a carpal tunnel injury at work. A “Workers Compensation First Report of Injury” form was prepared by Tool Works documenting the injury. Brown’s last day to work was April 8, 2005. In May 2005, Dr. Gregg Gober performed bilateral carpel tunnel release surgery on Brown. While she was off work for surgery, Brown drew short-term disability from her employer. In July 2005, Dr. Gober released Brown to return to full-duty work. However, this same month, the Cleveland Duo-Fast plant closed.
¶ 9. On October 17, 2005, Brown filed a petition to controvert, alleging a work-related bilateral carpal tunnel injury had occurred on October 8, 2004, at Duo-Fast. Tool Works answered, raising the affirmative defense that her claim was barred by the two-year statute of limitations set forth in Mississippi Code Annotated section 71-3-35(1).
¶ 10. In September 2008, a hearing was held on the primary issue of whether Brown’s claim was barred by the statute of limitations. Brown argued that Tool Works waived the two-year statute of limitations because it failed to file a motion to dismiss or obtain a hearing from November 2005 until September 2008.
¶ 11. The AJ entered an order denying Brown’s claim for benefits. She found Brown’s injury occurred no later than November 16, 2001, thereby barring her claim under the statute of limitations. The Commission affirmed the AJ’s judgment, but found that the statute of limitations began to run on January 8, 2003. The circuit court affirmed the Commission’s order, and Brown timely appealed. Brown argues on appeal that Tool Works waived the statute of limitations or, alternatively, that the limitations period began to run on May 14, 2004, when the nerve-conduction study indicated Brown had carpel tunnel syndrome.
STANDARD OF REVIEW
¶ 12. The Commission’s decision is given great deference on appeal. Murray v. Ingalls Shipbuilding/NGSS, 35 So.3d 561, 562 (¶ 5) (Miss.Ct.App.2010). “[Fjacts determined by the Commission may not be disturbed on appeal when those facts are supported by substantial, credible evidence.” Id. (citing Raytheon Aerospace Support Servs. v. Miller; 861 So.2d 330, 335 (¶ 11) (Miss.2003)).
ANALYSIS OF THE ISSUES
1. Waiver
¶ 13. Brown argues that the employer/carrier (Appellees) waived the statute-of-limitations affirmative defense because of their failure immediately to pursue a hearing on this defense, and their substantial participation in discovery and “litigation” for three years. The Appellees counter that they did not waive the expiration of the statute of limitations because the common-law theory of waiver “is not a procedural rule adopted by the Mississippi Workers’ Compensation Act, and the Commission has not made such a procedural rule.”
¶ 14. Waiver of an affirmative defense is subject to an abuse of discretion standard of review. Kinsey v. Pangborn Corp., 78 So.3d 301, 306 (¶ 13) (Miss.2011) (citing Jones v. Fluor Daniel Servs. Corp., 32 So.3d 417, 421 (¶ 17) (Miss.2010)).
¶ 15. We are not persuaded by Brown’s argument. The Commission has never adopted a procedural rule on waiver. The Mississippi Workers’ Compensation Act (Act) states that once the *164 claimant files a petition to controvert, the employer and carrier are given the opportunity to answer and conduct discovery. Miss. Workers’ Comp. Comm’n Procedural Rules 2, 4, 7, http://www. mwcc.state.ms.us/LAW-CLMS/_rules.asp (last visited July 22, 2013). The employer/carrier must plead all affirmative defenses. John R. Bradley & Linda R. Thompson, Mississippi Workers’ Compensation § 6:13 (Thompson-West 2012). Further, there is no procedure in workers’ compensation matters equivalent to summary judgment. Id. § 6:29. Procedural Rule 5 of the Act requires a pre-hearing statement within fifteen days after the time limitation for discovery. Only after the prehearing statements are filed can an evidentiary hearing take place.
¶ 16. Brown submits that even though there may not be a specific procedural rule on waiver in workers’ compensation law, the Mississippi Supreme Court has applied the doctrine of equitable estoppel to bar an employer/carrier’s assertion of the statute of limitations, citing McCrary v. City of Biloxi, 757 So.2d 978 (Miss.2000), and Holbrook v. Albright Mobile Homes, Inc., 703 So.2d 842 (Miss. 1997). In McCrary, an employer was es-topped from asserting that the claimant failed to file a petition to controvert within the statute of limitations because of detrimental representations made to the claimant. McCrary, 757 So.2d at 978 (¶ 1). In Holbrook, the employer was estopped from claiming that statute of limitations was not tolled because the employer failed to file a timely notice of fatal termination of injury. Holbrook, 703 So.2d at 843 (¶ 1). Generally, courts apply the doctrine of estoppel to the statute of limitations only when an employer has misrepresented whether benefits are available. Bradley & Thompson, Mississippi Workers’ Compensation § 7:5. But, equitable estoppel should not “be applied so liberally as to allow a plaintiff to assert estoppel where no inequitable behavior is present.” McCrary, 757 So.2d at 981 (¶ 13). In both McCrary and Hol-brook, misrepresentations by the employer were shown, thus justifying the court to apply equitable estoppel.[3] Here, however, Brown was never misled by her employer about workers’ compensation benefits; so the doctrine of estoppel is inapplicable.
¶ 17. Additionally, Brown cites Estate of Grimes ex rel. v. Warrington, 982 So.2d 365, 369-70 (¶¶ 21-27) (Miss.2008), East Mississippi State Hospital v. Adams, 947 So.2d 887, 890-91 (¶¶ 10-11) (Miss.2007), and MS Credit Center, Inc. v. Horton, 926 So.2d 167, 179-80 (¶¶ 39-42) (Miss.2006) for the proposition that the failure to pursue an affirmative defense in a timely manner while actively participating in the litigation constitutes waiver of that defense. However, these cases are inapplicable to the instant case as they are all tort cases filed in civil court, and not workers’ compensation cases.[4]
¶ 18. Moreover, we do not find the record indicates any error or delay tactics on the part of the Appellees in pursuing this affirmative defense. As the Appellees note, after Brown filed her petition to controvert, the Commission set the initial 120-day discovery deadline for March 16, 2006. Brown’s prehearing statement was due on March 31, 2006. Brown requested discovery extensions in April and September *165 2006. In December 2006, her claim was dismissed for failure to file a complete prehearing statement. A hearing on the claim’s merits was scheduled for October 2007; however, Brown asked for several continuances and extensions. Finally, the evidentiary hearing occurred in September 2008. We cannot say from the record that the Appellees failed to pursue their case.
2. Statute of Limitations
¶ 19. Section 71-8-35(1) sets out the statute of limitations for workers’ compensation claims. It provides that “if no payment of compensation (other than medical treatment or burial expense) is made and no application for benefits [is] filed with the commission within two (2) years from the date of the injury or death, the right to compensation therefor shall be barred.” Carpel tunnel syndrome has been considered a “latent infirmity” and “is not immediately recognizable.” Smith v. Nissan N. Am., 102 So.3d 321, 323 (¶ 16) (Miss.Ct.App.2012) (quoting Shipp v. Thomas and Betts, 13 So.3d 332, 334 (¶ 8) (Miss.Ct.App.2009)). A latent injury is one “that a reasonably prudent man would not be aware of at the moment it was sustained.” J.H. Moon & Sons, Inc. v. Johnson, 753 So.2d 445, 448 (¶ 15) (Miss. 1999) (citing Georgia Pac. Corp. v. Taplin, 586 So.2d 823, 827 (Miss.1991); Quaker Oats Co. v. Miller, 370 So.2d 1363, 1366 (Miss.1979)). With a latent injury, “[t]he claim period [for the statute of limitations] runs from the time [the] compensable injury becomes reasonably apparent.” Tabor Motor Co. v. Garrard, 233 So.2d 811, 817 (Miss.1970).
¶ 20. Generally, the application of a statute of limitations is a question of law which is reviewed de novo. Kinsey v. Pangborn Corp., 78 So.3d 301, 307 (¶ 16) (Miss.2011) (quoting Caves v. Yarbrough, 991 So.2d 142, 146 (¶ 15) (Miss.2008)). However, the time when the injury becomes reasonably apparent “is an issue of fact for the Commission to determine.” Tabor, 233 So.2d at 817. “We are bound by the Commission’s findings of fact when that decision is based upon substantial evidence.” Smith, 102 So.3d at 323 (¶ 16) (citing Jordan v. Pace Head Start, 852 So.2d 28, 30 (¶ 4) (Miss.Ct.App.2002)).
¶ 21. The AJ determined that the statute of limitations began to run on November 16, 2001, when Dr. Warrington, Brown’s primary-care physician, diagnosed her wrist pain as carpel tunnel syndrome, which was related to work activities. The full Commission disagreed, finding the medical records from that date did not clearly establish a work-connected injury. Instead, the Commission found the statute began to run on January 8, 2003, when Dr. Sandifer, on referral from Dr. Warrington, more clearly found Brown’s carpel tunnel syndrome to be work related. Regardless, using either date, more than two years had passed before Brown filed her petition to controvert on October 17, 2005.
¶ 22. Brown argues that the statute of limitations should start running on May 14, 2004, when she was diagnosed by Dr. Pande with carpel tunnel syndrome after he performed a nerve-conduction study. Using this date, her petition to controvert would be timely. Brown claims using the date of January 8, 2003, is improper because no nerve test had yet been performed, and only that test can definitively diagnose carpel tunnel syndrome.
¶ 23. We are not persuaded by Brown’s argument. There is substantial evidence in the record to support the Commission’s finding of fact that the statute of limitations began to run on January 8, 2003, when Brown’s injury became “reasonably apparent” and was more clearly found to be work related than the November 2001 date. It was not necessary for the carpel tunnel syndrome to be first diagnosed through the nerve-test procedure. Brown *166 had been diagnosed as early as November 16, 2001, with carpel tunnel syndrome; however, the issue became how clearly the condition was related to work.
CONCLUSION
¶ 24. The Appellees did not waive the statute of limitations under section 71-3-35, nor does the doctrine of equitable es-toppel apply to this case. There is substantial evidence to support the Commission’s finding that the statute of limitations began to run on January 8, 2003, thereby barring Brown’s workers’ compensation claim. Accordingly, the circuit court did not err in affirming the Commission’s decision.
¶ 25. THE JUDGMENT OF THE BOLIVAR COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P JJ., ISHEE, ROBERTS, CARLTON AND FAIR, JJ., CONCUR. JAMES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. MAXWELL, J., NOT PARTICIPATING.

. Illinois Tool Works, Inc. (Tool Works) acquired Duo-Fast in 1999 or 2000, but the plant in Cleveland retained the Duo-Fast name. In July 2005, the Duo-Fast plant in Cleveland closed.

. Prior to this date, Brown testified she did not miss any work due to her hands, except for the occasional vacation day that she would take when her hand pain and/or swelling worsened.

. The elements of equitable estoppel are: "(1) belief and reliance on some representation; (2) a change of position as a result thereof; and (3) detriment or prejudice caused by the change of position.” B.C. Rogers Poultry, Inc. v. Wedgeworth, 911 So.2d 483, 492 (¶ 32) (Miss.2005) (citing Cothern v. Vickers, Inc., 759 So.2d 1241, 1249 (¶ 19) (Miss.2000)).

. Grimes is a Mississippi Torts Claim Act case; Adams is an wrongful-death action, and Horton is a Federal Arbitration Act case.