304 So.2d 645 (1974)
STRUTHERS WELLS-GULFPORT, INC. and Liberty Mutual Insurance Company
v.
Myrtle L. BRADFORD.
No. 47786.
Supreme Court of Mississippi.
December 16, 1974.
*646 Eaton, Cottrell, Galloway & Lang, Gulfport, for appellants.
Breland & Barnett, Gulfport, for appellee.
INZER, Justice:
This is an appeal by Struthers Wells-Gulfport, Inc. and Liberty Mutual Insurance Company from a judgment of the Circuit Court of Harrison County reversing an order of the Workmen's Compensation Commission holding that the claim of appellee Myrtle L. Bradford was barred by the two-year statute of limitations. We affirm.
On or about December 2, 1968, Myrtle L. Bradford, referred to as claimant, while performing her duties for her employer Struthers Wells-Gulfport, Inc. was stung or bitten on her ankle by what she thought was a mosquito. Later in the day she became nauseated and developed a headache. She left work, went home, rested and returned to work the following day.
She went about her duties as usual for about ten days when the place on her ankle where she had been stung or bitten began to fester and swell. She went to see Dr. Ray Stewart who determined that she was suffering from a kidney infection which in his opinion was caused by a poisonous bite on her ankle. She informed her supervisor of what Dr. Stewart had told her, and a pest control company was called to check the premises. The check revealed the presence of several spiders, at least one of which was identified as a brown recluse spider.
Dr. Stewart prescribed medication for her, but the stinging sensation would reoccur from time to time. Not having had any problem with her ankle prior to the time she was bitten, she decided to go to another doctor. In December 1969 she saw Dr. Clements who prescribed medication for her, and the trouble cleared up for the time being. In April 1970 claimant left her employment to go with her husband to Georgia where he had been transferred. At that time the problem with her ankle appeared to be well. However, before leaving she conferred with Dr. Clements who informed her that he could not say whether the place on her ankle would stay well or not. It might stay well for a year and then come back. When she asked Dr. Clements what was the cause of her trouble, he informed her that he could not tell her the cause  it was just one of those things that happen sometimes that has no explanation. The doctor gave her two prescriptions to take with her to Georgia and told her if the place on her ankle began to fester and sting to have them filled and take the medication as prescribed. He also told her that if after taking the medication *647 her ankle did not get well, she might want to see another doctor.
Prior to leaving her employment claimant informed Mr. Burns, the plant manager, of what the doctor had told her. In response to her question as to whether her medical bills would continue to be paid if the trouble reoccurred, Mr. Burns assured her that she had nothing to worry about  her medical bills would be taken care of.
Claimant had no further trouble with her ankle until September 1970 when the trouble reoccurred. She then decided to visit a doctor in Georgia. She saw Dr. Tift who after examining her and making tests, informed her that the medication she was taking was the proper medication.
Apparently, she experienced no further trouble until April 1971 when the trouble reoccurred. In the meantime her husband had been transferred back to Gulfport, and in March 1971 she resumed her employment with Struthers Wells-Gulfport, Inc. She returned to Dr. Clements for treatment and when she submitted her medical bills to her employer for payment she was informed that the insurance company refused to pay the bills. She then talked with Mr. Burns again and told him that all she wanted to know was whether they were going to take care of her medical bills. She was assured that she had nothing to worry about and that her bills would be taken care of. Claimant had no further trouble with her ankle until October 1971. At this time it was real bad and she asked Dr. Stewart to get her an appointment at Ochsner's Clinic, which he did. On December 20 she saw Dr. Christenson at Ochsner's but at that time the place on her ankle was practically healed and Dr. Christenson told her to return home and come again when the trouble reoccurred. In February 1972, the trouble reoccurred, and she returned to Ochsner's Clinic. She was hospitalized for seven days while many tests were made. She was told at that time she had a vasculitis infection in the blood vessel.
Prior to getting this information, claimant on December 9, 1971, filed with the commission a motion to controvert the refusal of her employer-carrier to pay her medical bills. The employer-carrier answered and admitted that claimant received an injury in her employment, but alleged as an affirmative defense the two-year statute of limitations.
The record reflects that the insurance company paid all medical bills incurred prior to June 1970. No benefits for the time lost from work were paid by the insurance company because claimant never missed enough time from her work to meet the five day waiting period. When she was off from work, her employer paid her normal salary.
The foregoing statement of facts is based upon the testimony of claimant and two other employees of Struthers Wells-Gulfport, Inc. After introducing this testimony claimant requested a recess in order to obtain depositions or the presence of the doctors involved. The attorney referee indicated that this request would be granted. At that time the employer-carrier requested that the special plea of the statute of limitations be called up for consideration. The attorney referee sustained the plea, finding that within three weeks of the bite Mrs. Bradford had as much information as she then had as to the presence of poisonous insects under the desk, that the insurance had paid medical bills but paid no disability benefits, and that no application for benefits was filed with the commission assigning as error the finding by the attorney referee that her claim was barred by the statute of limitations. Upon review by the commission, the commission, without making any finding of fact, entered an order affirming the order of the attorney referee stating that it did not contain error of fact or law.
On appeal to the circuit court by the claimant that court held that the commission erred in holding under the foregoing facts that the claim was barred by the statute *648 of limitations. The court was of the opinion that in accordance with our holding in Tabor Motor Co. v. Garrard, 233 So.2d 811 (Miss. 1970), the time for the running of the two-year statute of limitations did not begin to run until the claimant as a reasonable woman should have recognized the nature, seriousness and probable compensable character of her injury. The court in this regard stated:
It was virtually impossible on December 2, 1968, for Mrs. Bradford to know that an apparently minor insect bite, not compensable under the Workmen's Compensation Act, would later develop into a more serious injury resulting in a compensable disability. In fact, the condition of her ankle was intermittent, with substantial periods of time elapsing between the inflammations. As late as April of 1970 Dr. Clements informed Mrs. Bradford "that he could not say whether it would ever be well or not; that it might stay well for a year and then it might come back out again . .. it is just one of those things that happen sometimes that we don't have an explanation for." In recognizing the nature of his or her injury or disease, claimant should be expected to display no greater diagnostic skill than any other uninformed layman confronted with the early symptoms of a progressive condition. It has been held that the reasonableness of a Claimant's conduct should be judged in the light of his or her own education and intelligence, not in the light of some hypothetical reasonable man of the kind familiar to tort law. 2 Larson, Workmen's Compensation Law, Sec. 78.41 (1969). It is this Court's opinion that it did not become reasonably apparent to Mrs. Bradford that she had a claim for disability resulting from the insect bite arising out of and in the course of her employment until March of 1971. In the interim period she excusably remained ignorant of her right to make a claim. In March of 1971 when she returned to the employment of Struthers Wells she was informed that the Insurance Carrier would not pay her unpaid medical bills. Further in April of 1971 Mrs. Bradford's doctor procured an appointment for her at Ochsner Clinic in New Orleans. Here, for the first time, after being examined by two specialists in internal diseases, Mrs. Bradford was informed that she had a vasculitis infection in the blood vessel in her ankle.
An order was entered reversing the order of the commission dismissing the claim of Mrs. Bradford and remanding the matter to the commission for further proceedings to determine the claim on its merit.
On appeal the employer-carrier first contends that the circuit court was in error in reversing the commission because the issue upon which the court reversed the case was not properly assigned as error before the circuit court and the commission. We find no merit in this contention. Claimant assigned as cause for review by the commission the fact that the attorney referee erred in sustaining the special plea of the defendant, which, of course, was the two-year statute of limitations. The first assignment of error on appeal to the circuit court states, "the full commission erred in affirming the attorney referee's order denying claimant the right to prosecute her case." While it is true that the assignment of error could be more specific, it is clear that the claimant contended before the commission and before the circuit court that under the facts of this case, her claim was not barred by the two-year statute of limitations. The circuit court recognized this as the issue and decided it. It appears that what the appellant is really complaining about is that the circuit court decided the case on a theory other than that advanced by the claimant. In other words claimant contended that under the facts and circumstances of this case the employer was estopped to plead the statute of limitations. It was the duty of the circuit court to review the evidence and to *649 determine whether the commission correctly applied the law to such evidence. When the court reviewed the evidence, it became apparent to it, as it is to us, that the rule announced in Tabor, supra, was applicable and that the commission was in error in not so holding. The fact that neither party cited the Tabor case did not prohibit the circuit court from basing its opinion on the rule announced in that case.
Appellant also contends that the trial court erred in applying the rule announced in Tabor to this case. While the facts in the case before us are not the same as in Tabor, it is clear that the principles announced therein are applicable. We pointed out in Tabor that the two-year statute of limitations [Section 71-3-35, Mississippi Code Annotated (1972)] begins to run from the date of injury and not from the date of the accident. We also pointed out that under the statute the claim period runs from the time that a compensable injury becomes apparent. Under our act the employer is required to pay compensation for disability supported by medical finding. The word "injury" in the two-year statute refers to a compensable injury from which incapacity and its extent can reasonably be ascertained by medical evidence. Thus, Mrs. Bradford had no compensable injury resulting from the spider bite until it became reasonably apparent that she had a disability arising therefrom. Consequently, we are in agreement with the circuit court that the statute of limitations does not begin to run until by reasonable care and diligence it is discoverable and apparent that a compensable injury has been sustained. Here Mrs. Bradford knew or had reason to believe that she had sustained a spider bite, but there is nothing in the record to indicate that she, as a reasonable person, should have recognized the nature, seriousness and probable compensable character of the injury. Prior to filing a motion to controvert, she never had reason to foresee or ascertain that she was likely to be incapacitated from work. In short, the fact that she had an accident was apparent, but the injury resulting from the accident was latent.
Finally, appellant argues that although the rule announced in Tabor is applied to the facts in this case, this case should be remanded to the commission for a finding by the commission as to the date it became reasonably apparent that claimant had a compensable injury. However, we are of the opinion that it is in this case, as it was in Tabor, wherein we stated:
In summary, we hold that where latent injuries are involved, the time for filing a compensation claim under the two-year statute commences to run when it becomes reasonably discoverable that claimant has sustained a compensable injury and disability. The claim period runs from the time compensable injury becomes reasonably apparent. See also 100 C.J.S. Workmen's Compensation § 468(8) (1958); W. Malone, Louisiana Workmen's Compensation Law and Practice § 384 (Supp. 1964). Ordinarily this is an issue of fact for the Commission to determine on conflicting evidence, but in this case the evidence shows that the claim was made within the required two years. (233 So.2d at 817).
For the reasons stated we are of the opinion that the judgment of the circuit court should be affirmed and the cause remanded to the commission for consideration of Mrs. Bradford's claim on its merits. This conclusion makes it unnecessary to consider the question of estoppel raised by claimant on cross appeal.
Affirmed on direct and cross appeals and remanded to the Workmen's Compensation Commission.
RODGERS, P.J., and PATTERSON, SUGG and WALKER, JJ., concur.