462 So.2d 330 (1984)
Harrison V. PITTMAN
v.
Linda HODGES, Administratrix of the Estate of Joseph R. Hodges.
No. 54501.
Supreme Court of Mississippi.
December 19, 1984.
*331 Cary E. Bufkin, Jim Bullock, Shell, Buford, Bufkin, Callicutt & Perry, Jackson, John S. Holmes, Yazoo City, for appellant.
Michael T. Lewis, Oxford, for appellee.
Before ROY NOBLE LEE, P.J., and HAWKINS and SULLIVAN, JJ.
SULLIVAN, Justice, for the Court:
This judgment based upon a jury verdict of $20,000 in favor of appellee for nerve damage to the face and mouth of Joseph Hodges is appealed from the Circuit Court of Yazoo County, Mississippi.
Three issues are raised:
I. Was this action barred by the two-year statute of limitations?
II. Was there competent medical evidence showing causal connection between appellant's treatment and Hodges' injuries?
III. Was the jury properly instructed regarding damages?

I.

WAS THE ACTION BARRED BY MISSISSIPPI CODE ANNOTATED § 15-1-36 (SUPP. 1984), THE TWO YEAR STATUTE OF LIMITATIONS ON DENTAL MALPRACTICE?
This suit was filed two years and seven days after Hodges last saw Dr. Pittman. In the interim, Hodges was divorced and ultimately died. The suit was revived in his daughter's name and when the child died was revived again by his former wife, as Administratrix of his estate.
October 5, 1978, Hodges was examined by Dr. Pittman.
October 16, 1978, Dr. Pittman extracted two wisdom teeth, packed the cavity with gauze and put two stitches across the socket.
October 23, 1978, Hodges returned to Dr. Pittman to have the packing and stitches *332 removed. He complained to Dr. Pittman of numbness in his lip.
November 17, 1978, Hodges returned, still complaining of numbness and a feeling of material still in the socket. Dr. Pittman removed a piece of gauze from the hole in Hodges' jaw, which Pittman had overlooked on October 23, 1978. Dr. Pittman also prescribed an antibiotic.
November 27, 1978, Hodges returned to Dr. Pittman to have a stitch removed which had been overlooked by Dr. Pittman on October 23, 1978, and November 17, 1978. Dr. Pittman told Hodges the complained-of numbness might last from two to six weeks or perhaps as long as six months to a year. This was the last visit Hodges made to Dr. Pittman.
The Mississippi statute of limitations on bringing a dental malpractice action reads as follows:
No claim in tort may be brought against a ... dentist ... for injuries arising out of the course of medical or surgical treatment unless it is filed within two (2) years from the date of the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered.
§ 15-1-36, Mississippi Code Annotated (Supp. 1984).
The appellant urges that this statute begins to run from the date the alleged act or omission shall or with reasonable diligence might have been first discovered, and not from the manifestation of an effect of the alleged act. From the facts in this case and that theory, the appellant urges that when Hodges first expressed dissatisfaction with the surgery or no later than November 27, 1978, the statute of limitations was triggered. The permanence of the numbness was unknown or unpredictable at that time.
In Struthers-Wells Gulfport, Inc. v. Bradford, 304 So.2d 645 (Miss. 1974), we held that the two-year workmen's compensation statute of limitations did not begin to run against a claimant who sustained a spider bite until by reasonable care and diligence it was discoverable and apparent that a compensable injury had been sustained. We pointed out in Bradford that under the statute the claim period runs from the time that a compensable injury becomes apparent, and that nothing in the Bradford record indicated that the claimant as a reasonable person should have recognized the nature, seriousness, and probable compensable character of the injury. 304 So.2d at 649. It would appear, therefore, that in Mississippi the principle relied upon by appellant to determine when the statute of limitations begins to run does not invariably focus upon the date on which the act or omission occurs; the focus is rather upon when the plaintiff discovers the injury by the exercise of reasonable care and diligence.
In Tribou v. Gunn, 410 So.2d 378 (Miss. 1982), § 15-1-36, Mississippi Code Annotated (Supp. 1984), was applied to a case involving a series of negligent diagnoses occurring during a course of treatment lasting several years by the defendant physician. Tribou was examined by the physician concerning a lump in her breast in 1976. Two months later a pap smear by another doctor suggested some malignant growth. Tribou brought the pap smear to Dr. Gunn in January, 1977, but he maintained that she did not have breast cancer. On May 12, 1978, Dr. Gunn performed a biopsy on Tribou which revealed breast cancer and required a radical mastectomy. Tribou brought suit on March 19, 1980, and Dr. Gunn interposed the statute of limitations.
This Court held that plaintiff's suit for acts occurring prior to May 12, 1978, was not barred by the statute of limitations because the defendant did not diagnose her cancer until that date and there is nothing in the record to indicate that she could have known or discovered her cancer by the exercise of reasonable diligence by that time. This Court held that she was entitled to a trial on her claim which charged a series of negligent acts or omissions beginning in 1976, because she filed her suit within two years from the date that she *333 discovered the acts which constituted medical malpractice. 410 So.2d at 379.
Under the theory of Tribou, appellant urges that the statute would begin to run against Hodges from the date that he first discovered his numbness or on October 23, 1978. This is incorrect. Dr. Pittman testified that he told Hodges that a numbness of this type could take from two to six weeks or even up to six months to a year to go away, and he did not tell Hodges this until November 27, 1978. In our view, Hodges was entitled to rely upon Dr. Pittman's statements that the numbness would temporarily last from two to six weeks or even longer, and only thereafter could Hodges then by the exercise of reasonable diligence have known or discovered that his numbness was permanent and would not go away.
The trial court was eminently correct when it followed this principle in ruling on appellant's motion for a directed verdict which asserted this statute of limitations. We quote the trial court as follows:
BY THE COURT: The motion will be denied. It is a question of when it reasonably could have been discovered... . The fact that he had experienced numbness in the jaw does not necessarily mean that he could have reasonably expected or suspected at that time that there was any neglect or omission, if any.
In summary, the essence of the injury to Hodges was the permanent nature of the numbness, which could not reasonably have been discovered until the period of temporary numbness described by Dr. Pittman had passed. At the very least this period was from two to six weeks, and if the minimum figure of two weeks is added to November 27, 1978, then this suit was timely filed within two years following the very earliest date at which Hodges could reasonably have discovered the permanent numbness resulting from Dr. Pittman's treatment. The first assignment of error is, therefore, without merit.

II.

WAS THERE COMPETENT MEDICAL EVIDENCE SHOWING CAUSAL CONNECTION BETWEEN DR. PITTMAN'S TREATMENT AND THE INJURIES OF HODGES?
During the direct examination of Dr. Elgene G. Mainous, chairman of oral maxillofacial surgery at the University of Mississippi Medical Center, who testified as an expert on behalf of Hodges, the following took place:
Q Dr. Mainous, do you have an opinion as to the cause of numbness based on a reasonable degree of medical certainty and related to the same hypothetical which I posed to you earlier? Do you have such an opinion?
A Well 
Q As to the cause of numbness?
A There could be three possible causes of numbness. One, the  the nerve could have been damaged during the surgical procedure. Two, the nerve could be damaged from exerting extreme pressure on a material that does not change its intensity when it's in the presence of a solution. And three, the presence of infection secondary to a foreign body that doesn't resorb.
Dr. Mainous also testified that in his opinion the use of the xrays in question as a diagnostic tool prior to surgery did not conform to the standard of care in Yazoo City, Mississippi.
Based upon this response, Dr. Pittman urges that the peremptory instruction should have been granted because by setting forth three alternative actions the testimony of Dr. Mainous was incompetent to prove proximate cause. The incompetency theory arises because Dr. Mainous expressed his opinion in terms of medical possibilities, and not probabilities. That medical probability is required by our law is supported by our decision in Garrett v. Wade, 259 So.2d 476 (Miss. 1972) to the effect that:
This Court has consistently held that medical testimony is not probative unless *334 it is in the terms of probabilities and not possibilities. In Scott County Co-Operative v. Brown, 187 So.2d 321 (Miss. 1966), we held that the doctor's statement that he was of the opinion that the mental condition "could have been caused" by the accident was insufficient to justify submitting to the jury the question of causal connection between the malady and the accident. This Court has ruled to the same effect in Morrell & Company v. Shultz, 208 So.2d 906 (Miss. 1968); Kramer Service, Inc. v. Wilkins, 184 Miss. 483, 186 So. 625 (1939); Mutual Benefit Health & Accident Association v. Johnson, 186 So. 297 (Miss. 1939); Teche Lines, Inc. v. Bounds, 182 Miss. 638, 179 So. 747 (1938); Berryhill v. Nichols, 171 Miss. 769, 158 So. 470 (1935).
In Scott County Co-Op v. Brown, cited in Garrett v. Wade, supra, this Court made a careful reading of all of the expert witness's testimony before evaluating his opinion as to causal connection. The doctor first stated that it was "very likely" that the accident caused her mental condition, and then stated "I am of the opinion that it could have been." Scott County, 187 So.2d at 326. This Court held that the testimony showed only a possibility that her psychotic condition was caused by the accident and it should, therefore, have been excluded.
In this case, as in Scott County Co-Op, supra, the inquiry should be whether after a careful reading of all the testimony of Dr. Mainous, his opinion as to causation is expressed in terms of medical probability or possibility. In connection with this inquiry, this Court has noted in Jesco, Inc. v. Shannon, 451 So.2d 694, 700 (Miss. 1984), that absolute certainty is not required for an expert witness and whenever facts are in dispute, or the evidence is such that fairminded men may draw different inferences, a measure of speculation and conjecture is allowed. See also, City of Jackson v. Locklar, 431 So.2d 475 (Miss. 1983).
Finally, the scope of appellate review on motion for judgment n.o.v. requires this Court to consider all the evidence, but in the light and with all reasonable inferences most favorable to the party opposed to the motion and to grant such a motion only if the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable men could not have reached a contrary verdict. City of Jackson v. Locklar, 431 So.2d 475, 478; General Tire and Rubber Co. v. Darnell, 221 So.2d 104 (Miss. 1969).
Dr. Mainous's opinion as to the proximate cause of Hodges' numbness was expressed in three alternatives. He testified in some detail as to the basis for his opinion on each of these alternatives. The meaning of his answer "there could be three possible causes of numbness" should be considered in light of his testimony on each of these causes to determine whether he considered the numbness a possible result of one of the three causes mentioned or a probable result of Dr. Pittman's treatment as a whole with three alternative explanations for the numbness.
First, Dr. Mainous expressed the opinion that the numbness could have been caused by an injury during the surgical procedure. This sort of injury occurs when the roots of the impacted wisdom tooth impinge upon the mandibular nerve as the tooth is removed. An essential diagnostic tool for preventing such an injury is clear, detailed xrays showing the proximity of the mandibular canal to the roots of the impacted wisdom tooth. Dr. Mainous testified that the panagraphic xray used by Dr. Pittman in this case was inadequate because it lacked the clear detail showing the relation of the mandibular nerve to the wisdom tooth. While Dr. Pittman testified that the xray had faded in time but possessed sufficiently clear detail at the time of the surgery to enable him to make a proper diagnosis, Dr. Mainous contradicted this and stated that in his teaching he used ten-to-fifteen year old xrays which had not faded with time. Dr. Pittman and his expert witness Dr. Hurt admitted that in its present condition the panagraphic xray was not of diagnostic quality. Secondly, Dr. *335 Mainous stated that the nerve could be damaged from exerting extreme pressure on the packing material placed in the tooth socket. Dr. Mainous stated that when there is persistent bleeding an absorbable material may be put in a surgical site to coagulate the blood but his opinion was that the proper practice was to use absorbable materials which become flimsy and disintegrate into the body when saturated. He stated that a danger exists with the use of Iodoform gauze because it does not change consistency when moistened so that considerable pressure can be applied to the gauze. He also stated that Dr. Pittman deviated from the normal standard of care in leaving some of the non-absorbable gauze in the wound for thirty-one days. Dr. Pittman stated that he removed 99% of the gauze on October 23rd, and that only a small silver in a hole in the jawbone was overlooked. Finally, Dr. Mainous stated that the numbness could have resulted from an infection secondary to the portion of gauze left in Hodges' mouth for thirty-one days. Pittman denied that there was any infection at any time in Hodges' mouth and initially did not recall writing Hodges an antibiotic prescription. When confronted with a copy, Pittman stated that he wrote it as a psychological boost and as a precautionary measure since Hodges was preparing to go on a deer hunt. Dr. Mainous stated that the body's response to leaving the gauze in the wound for thirty-one days would be inflammation and infection. In his opinion, leaving the gauze in the wound for that period of time would produce an infection that would affect the nerve tissue.
Expert witnesses need not testify with absolute certainty. There is no merit to the slightly ironic argument that more than one breach of the standard of care casts doubt upon Dr. Pittman's liability and entitles him to an exemption from the scrutiny of the jury.
Taken as a whole, Dr. Mainous's testimony and his answer to the hypothetical question expressed an opinion based upon a reasonable degree of medical certainty in terms of medical probability that the numbness of Hodges was caused by the actions of Dr. Pittman and Dr. Pittman's breach of the applicable standard of care.
There is no merit to appellant's second assignment of error.

III.

WAS THE JURY PROPERLY INSTRUCTED REGARDING DAMAGES?
The only jury instruction pertaining to damages which was given in this case is as follows:
In order to be recovered damages must be shown with reasonable certainty both as to their nature and as to their cause. A plaintiff is not deprived of his right to recover because he is unable to prove with absolute certainty the mathematical value of his injury. If the cause of injury is reasonably certain, he may reasonably estimate the damages. Although the lack of a perfect measure does not preclude recovery, he must not guess or speculate. The plaintiff must give you a reasonable basis on which to base your estimate.
Appellant raises the objection that standing alone this instruction is an insufficient guide to the jury as to how to determine the amount of damages, if any it might award. However, the appellant himself offered no damage instructions to correct the alleged deficiencies assigned on this appeal. As a matter of fact, when objections to the jury instructions were being heard, counsel for appellant offered no objection to this instruction, but stated instead "I think this is probably a reasonable instruction, Your Honor." This jury instruction did form the basis for part of appellant's motion for a new trial, however.
It is undisputed that there was no evidence in the record as to the lost wages of Hodges or his diminished earning capacity, but there was evidence from both Dr. Mainous and Linda Hodges concerning the extent of the injury and the related suffering.
*336 Appellant cites Alabama Great Southern R.R. Co. v. Broach, 238 Miss. 618, 119 So.2d 923 (1960), Broadhead v. Gatlin, 243 Miss. 386, 137 So.2d 909 (1962), and State Highway Commission v. Engell, 251 Miss. 855, 171 So.2d 860 (1965), for the proposition that where the jury is instructed only by a statement such as that in the case at bar, the case should be reversed and remanded for a lack of a proper basis for the jury to measure damages. It should be noted that all three of the cases cited by the appellant involve injuries to real property, and not personal injury.
Appellee claims the appellant is procedurally barred by Mississippi Supreme Court Rule 42 which states in part:
... No assignment of error based on the giving of an instruction to the jury will be considered on appeal unless specific objection was made in the trial court stating the particular ground or grounds of such objection.
Rule 42 further provides that this Court may raise an objection to a jury instruction in order to prevent manifest injustice. We cannot say that manifest injustice resulted from the unobjected-to jury instruction in this case. The damages suffered by Hodges as a result of the numbness of his lip and part of his face are not susceptible of precise computation. Assigning a money value to compensate a person for the permanent loss of feeling in part of his face is not a matter to which any specific guidelines can be supplied to a jury. Even though there was no loss of wages evidence, there was considerable testimony as to the pain and suffering Hodges sustained from this injury. That testimony, coupled with appellant's apparent approval of the jury instruction prior to the verdict by virtue of his failure to object to it, is sufficient to determine that this assignment of error is without merit.
We, therefore, affirm.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and BOWLING, HAWKINS, DAN M. LEE, PRATHER and ROBERTSON, JJ., concur.