878 So.2d 80 (2003)
SUTHERLANDS LUMBER & HOME CENTER, INC., Appellant,
v.
Felicia WHITTINGTON, Appellee.
No. 2002-CA-00789-COA.
Court of Appeals of Mississippi.
August 19, 2003.
Rehearing Denied February 3, 2004.
Certiorari Denied July 29, 2004.
*81 Jan F. Gadow, H. Gray Laird, III, Ridgefield, Jamie Deon Travis, attorneys for appellant.
Rhonda C. Cooper, Calvin C. Williams, Jackson, attorneys for appellee.
Before SOUTHWICK, P.J., LEE and GRIFFIS, JJ.
LEE, J., for the Court.

PROCEDURAL HISTORY
¶ 1. Appellee Felicia Whittington was injured when a Sutherlands employee dropped a sink on her while she was shopping at a Sutherlands store in Jackson. Thereafter, Whittington sued Sutherlands, and after a trial in February 2002, the jury returned a verdict in Whittington's favor in the amount of $275,000. Sutherlands filed a motion for new trial on damages or, alternatively, a remittitur, but the motion was denied. Sutherlands subsequently perfected its appeal to this Court and argues the following: (1) the verdict is against the overwhelming weight of the evidence; (2) the jury was confused by a faulty jury instruction; (3) the jury's excessive damage award is a result of bias, passion and prejudice.

FACTS
¶ 2. On December 14, 1995, Felicia Whittington was shopping at Sutherlands. Sutherlands employee Brian Dixon assisted Whittington and her friends as they looked at plumbing supplies, and during this time another employee, Edward Dressner, was climbing a ladder in the same aisle to retrieve a sink. As Dressner was climbing down the ladder with the sink, the cardboard handles broke on the box containing the sink, and the sink fell to the ground hitting Whittington on her leg.
*82 ¶ 3. After the incident, Whittington was taken by ambulance to the hospital where she was treated and released within six hours. Three days later, Whittington returned to the hospital complaining of headaches, although she did not recall hitting her head on anything. A CAT scan the following day produced normal results, and Whittington went to another doctor the following month complaining about her knees, back, neck, headaches and nightmares. In May 1996, Whittington also was examined by a clinical psychologist for depression and anxiety, and the doctor diagnosed Whittington with post-traumatic stress disorder. By October of the same year, Whittington reported to her psychologist that she was getting back to normal and was pleased with her progress. The psychologist referred Whittington to a neurologist for her headaches and after a course of treatment Whittington seemed to be better. The total cost of her medical bills related to the incident computed to $23,978.

DISCUSSION OF THE ISSUES

I. WAS THE VERDICT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 4. Sutherlands first argues that the verdict is against the weight of evidence, and we look to our standard of review.
"In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." The jury is the ultimate judge of the weight of the evidence and the credibility of the witnesses. Because of the jury verdict in favor of the appellee, this Court will resolve all evidentiary conflicts in the appellee's favor and will draw all reasonable inferences which flow from the testimony given in favor of the appellee. We will not set aside the jury's verdict unless the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.
Trustmark Nat'l Bank v. Jeff Anderson Reg'l Med. Ctr., 792 So.2d 267(¶ 18) (Miss.Ct.App.2000) (citations omitted).
¶ 5. Sutherlands argues that Whittington did not prove the existence of a head injury at the time of the accident. Three witnesses on the scene testified that Whittington did not hit her head. Whittington, herself, did not report a head injury or loss of consciousness to the paramedic or to the emergency room physicians upon arriving there and remaining there for six hours after the accident. In fact, Whittington did not actually testify that she hit her head, only that, after the box hit her legs, she "woke up" crying from the pain to her legs. However, Whittington did return to the emergency room a few days later complaining of headaches, dizziness, nausea, and vomiting. When asked if she had hit her head, Whittington told the emergency room personnel that she did not know. Although a CAT scan revealed everything to be normal, Whittington was still experiencing headaches. Later, she was diagnosed as having post-traumatic migraines.
¶ 6. There was also testimony that Whittington had a high stress job as a violence prevention coordinator. Whittington further testified that she had fallen down some steps at work approximately a month and a half prior to the accident at Sutherlands and she had been involved in a car accident the day after her fall at work. After each accident, Whittington went to the emergency room where she complained of back pain on both occasions.
*83 ¶ 7. Dr. Bell, Whittington's expert, testified that without some head injury or trauma suffered in the fall, then the headaches experienced by Whittington were not caused by the accident. In her deposition, Dr. Bell also stated that Whittington could have caused her own headaches by taking numerous over-the-counter analgesics.
¶ 8. There was ample evidence for the jury to find that Whittington did injure her knee and needed compensation for that particular injury. However, given the testimony at the trial and the lack of any evidence of a head injury to Whittington, we find that the lower court abused its discretion in failing to grant a new trial. We must reverse and remand on this issue for a new trial on damages.

II. WAS THE JURY CONFUSED BY A FAULTY JURY INSTRUCTION?
¶ 9. Although we are reversing and remanding, we briefly address Sutherlands' next issue. Sutherlands claims that the jury was confused by a faulty jury instruction. Specifically, Sutherlands contends that jury instruction P-7 was not warranted as it was not supported by the evidence at trial. Sutherlands includes wording from instruction P-7 in its brief; however, the record does not contain instruction P-7 nor does it contain any of the other jury instructions. It is the duty of the appellant to ensure that all issues necessary to his appeal are included in the record. Branch v. State, 347 So.2d 957, 958-59 (Miss.1977). We must "decide each case by the facts shown in the record, not assertions in the brief." Burney v. State, 515 So.2d 1154, 1160 (Miss.1987) (Appellant's claims concerning jury instructions were found to be without merit when he failed to include the jury instructions in the record.). Accord McDerment v. Miss. Real Estate Comm'n, 748 So.2d 114 (¶ 19) (Miss.1999). As Sutherlands did not provide a copy of any jury instructions in its brief, we find this issue to be without merit.
¶ 10. We must note that both parties rely on cases which discuss whether Mississippi law requires expert medical testimony to be expressed in terms of medical probability or possibility. The supreme court has stated that testimony in terms of medical probability is required by Mississippi law. Pittman v. Hodges, 462 So.2d 330, 333 (Miss.1984) (citing Garrett v. Wade, 259 So.2d 476 (Miss.1972), which stated that "medical testimony is not probative unless it is in the terms of probabilities and not possibilities"). Whittington relies on Illinois Central Railroad Co. v. Clinton, 727 So.2d 731(¶ 13) (Miss.Ct.App.1998), for the proposition that "a doctor's expert opinion as to causation need only be `expressed in terms of medical probability or possibility.'" (citing Pittman, 462 So.2d at 334). However, Pittman actually states that the first inquiry should be whether or not the testimony of the medical expert was stated in terms of medical probabilities or possibilities. Pittman, 462 So.2d at 334. If the testimony shows only a possibility, then it has no probative value; if it shows a probability, then it has probative value. Id. Whittington suggests that Illinois Central abrogates the need for medical expert testimony to be stated in terms of medical probability; however, we decline to read it as such.

III. WAS THE JURY'S DAMAGE AWARD A RESULT OF BIAS, PASSION AND PREJUDICE?
¶ 11. As we have affirmed the finding of negligence, reversed the damages awarded and remanded for a new trial solely on the issue of damages, we decline to address this issue.
¶ 12. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED AS TO ITS FINDING OF *84 NEGLIGENCE BUT REVERSED AND REMANDED FOR A NEW TRIAL SOLELY ON THE ISSUE OF DAMAGES. COSTS OF THIS APPEAL ARE TAXED ONE-HALF TO THE APPELLANT AND ONE-HALF TO THE APPELLEE.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, IRVING, MYERS AND GRIFFIS, JJ., CONCUR. CHANDLER, J., NOT PARTICIPATING.