MAXWELL, J.,
 

 for the Court:
 

 ¶ 1. The Hinds County Circuit Court granted summary judgment in favor of Dr. Ann Myers in this medical-malpractice case. Talmadge Miller filed suit after being diagnosed with Guillian-Barre Syndrome and lupus. He alleged these diseases resulted from his use of the drug Remicade, which Dr. Myers had prescribed him. Miller claims the Hinds County Circuit Court improperly granted summary judgment because his initial filing in the Rankin County Circuit Court had tolled the statute of limitations. He also contends the circuit court erred in granting summary judgment without a hearing. Finding no reversible error, we affirm.
 

 FACTS
 

 ¶ 2. On March 24, 2003, Baptist Medical Center emergency room doctors diagnosed Miller with Guillian-Barre Syndrome and lupus. He alleged the drug Remicade, which Dr. Myers had previously prescribed him for rheumatoid arthritis, caused his health problems.
 

 ¶ 3. On August 31, 2004, Miller filed a medical-malpractice suit against Dr. Myers in the Circuit Court of Rankin County. Dr. Myers did not answer the complaint. On March 7, 2005, the circuit court entered a default judgment against her. Dr. Myers then filed a motion to set aside the default judgment and to dismiss the action. She alleged Miller failed to properly serve her with process, and because she practiced medicine in Hinds County, not Rankin County, venue was improper. The circuit court ultimately set aside the default judgment and dismissed the lawsuit on November 9, 2005. The circuit court based its decision on Miller’s confession that he failed to properly effect service of process on Dr. Myers.
 

 
 *650
 
 ¶ 4. On December 13, 2005, Miller filed a second malpractice action against Dr. Myers, this time in Hinds County Circuit Court. On March 28, 2006, Dr. Myers filed a motion for summary judgment. She claimed the two-year statute of limitations had expired prior to Miller filing the Hinds County complaint. Because Dr. Myers had not been properly served in the Rankin County action, she claimed the statute of limitations remained tolled for only 120 days. She argued that after 120 days, the statute of limitations began running again and expired on July 23, 2005, almost five months prior to Miller initiating the Hinds County lawsuit.
 

 ¶ 5. On August 11, 2006, Miller apparently mailed a response to Dr. Myers’s motion for summary judgment directly to the circuit judge. He did not file his response with the circuit clerk. On August 14, 2005, Dr. Myers filed a motion to strike Miller’s response as untimely, as well as a rebuttal to Miller’s response. At this point all documents mailed to Miller’s attorney were wrongly addressed to his former office, from which he had recently moved. Miller insinuates this was perhaps intentional on the part of Dr. Myers’s attorneys to gain a tactical advantage. Miller’s attorney asserts that he did not discover the pending summary-judgment motion until personally inspecting the court file.
 

 ¶ 6. The Hinds County circuit judge granted a hearing, and on August 15, 2006, the judge heard arguments on Dr. Myers’s summary-judgment motion. The circuit judge did not strike Miller’s response or otherwise rule on the summary-judgment motion during the hearing. On August 30, 2006, Dr. Myers filed a supplement to her motion for summary judgment, which she mailed to Miller’s attorney’s new address. Though the supplemental filing bore Miller’s proper address, there is no response from Miller in the record. Dr. Myers then filed a second supplement to the motion and sent a copy to Miller’s attorney’s new office. The record shows no response by Miller to this supplement either.
 

 ¶ 7. A second hearing on the motion for summary judgment was scheduled for August 18, 2008. Miller failed to appear at this hearing. His absence resulted in the circuit judge issuing a show-cause order. The order directed Miller to respond to Dr. Myers’s motions by August 25, 2008, or summary judgment would be granted without further hearing. Miller’s response to the show-cause order is also absent from the record. However, Dr. Myers filed a rebuttal to his response on August 26, 2008, which indicates Miller claimed he received no notice of the hearing.
 

 ¶ 8. On October 16, 2008, Dr. Myers filed a third notice for a hearing on the motion for summary judgment, to be held on December 16, 2008. Though Dr. Myers’s attorney sent the notice by certified mail to Miller on three occasions, it was returned unclaimed each time. The record includes affidavits from employees of Dr. Myers’s attorney’s law firm who attempted to hand deliver notice to Miller’s attorney. After three attempts, on October 23, 2008, one of the runners was able to deliver notice of the hearing to Miller’s attorney’s office by handing it to a secretary.
 

 ¶ 9. Miller claims his attorney’s hospitalization for knee surgery around this time prevented him from receiving the notice. However, his attorney admits he became aware of the scheduled hearing. On December 16, 2006, Miller’s lawyer appeared in the Hinds County Circuit Court. But once there, he discovered the circuit judge had already entered summary judgment in Dr. Myers’s favor. The circuit judge granted summary judgment on the basis that Miller confessed the issues raised by
 
 *651
 
 Dr. Myers. Miller now appeals the grant of summary judgment.
 

 STANDARD OF REVIEW
 

 ¶ 10. We review the circuit court’s granting of summary judgment de novo.
 
 Byrne v. Wal-Mart Stores, Inc.,
 
 877 So.2d 462, 464 (¶ 3) (Miss.Ct.App.2003) (citing
 
 Young v. Wendy’s Int’l, Inc.,
 
 840 So.2d 782, 783 (¶ 3) (Miss.Ct.App.2003)). Summary judgment is proper when “the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.”
 
 Id.
 
 at 464-65 (¶ 3) (quoting
 
 Piggly Wiggly of Greenwood, Inc. v. Fipps,
 
 809 So.2d 722, 725 (¶ 9) (Miss.Ct.App.2001)); M.R.C.P. 56(c). We view the evidence in the light most favorable to the non-movant.
 
 Byrne,
 
 877 So.2d at 465 (¶ 3) (citing
 
 Young,
 
 840 So.2d at 784 (¶ 7)).
 

 ¶ 11. “[T]he error in granting a summary judgment motion without a hearing may be harmless error if there are, indeed, no triable issues of fact.”
 
 Partin v. N. Miss. Med. Ctr., Inc.,
 
 929 So.2d 924, 934 (¶ 38) (Miss.Ct.App.2005) (citing
 
 Croke v. Southgate Sewer Dist.,
 
 857 So.2d 774, 778 (¶ 10) (Miss.2003);
 
 Adams v. Cinemark USA, Inc.,
 
 831 So.2d 1156, 1163 (¶ 26) (Miss.2002)).
 

 DISCUSSION
 

 I. Summary Judgment
 

 ¶ 12. The circuit judge found Miller confessed the issues raised in Dr. Myers’s “supplemented/renewed” motion for summary judgment by failing to respond to the court’s show-cause order. Miller filed no response to any of Dr. Myers’s supplemental filings supporting her summary-judgment motion. The circuit court noted in its order of dismissal that Miller’s only response was his assertion that he never received the additional motions. In granting summary judgment, the circuit judge found Miller had failed to present any support for his malpractice action, confessed the issues raised by Dr. Myers, and otherwise failed to show any good cause why summary judgment should not be granted.
 

 ¶ 13. In addressing the circuit judge’s decision that Miller confessed the issues raised by Dr. Myers, we first note that an opponent to a motion for summary judgment “must rebut by producing significant probative evidence showing that there are indeed genuine issues for trial.”
 
 McMichael v. Nu-Way Steel & Supply, Inc.,
 
 563 So.2d 1371, 1375 (Miss.1990) (quoting
 
 Newell v. Hinton,
 
 556 So.2d 1037, 1041 (Miss.1990)). The opponent to summary judgment carries “a burden of rebuttal, one which arises after the moving party has satisfied the burden of proof that no genuine issue of material fact exists.”
 
 Price v. Purdue Pharma Co.,
 
 920 So.2d 479, 485 (¶ 16) (Miss.2006). A party adverse to the motion “must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.” M.R.C.P. 56(e).
 

 ¶ 14. But the mere failure of a non-movant to respond does not necessarily entitle the movant to summary judgment by default. The supreme court has pointed out that “even in the absence of a response the court may enter judgment only ‘if appropriate,’ i.e., if no genuine issue of material fact exists.”
 
 Foster v. Noel,
 
 715 So.2d 174, 180 (¶ 36) (Miss.1998).
 

 ¶ 15. Here, the record is devoid of any response by Miller to Dr. Myers’s initial, March 28, 2006, motion for summary judgment. This omission is attrib
 
 *652
 
 uted to Miller, as it is the appellant’s duty to ensure information necessary to his appeal is included in the record.
 
 Sutherlands Lumber & Home Ctr., Inc. v. Whittington,
 
 878 So.2d 80, 83 (¶ 9) (Miss.Ct. App.2003) (citing
 
 Branch v. State,
 
 347 So.2d 957, 958-59 (Miss.1977)). Though his response is absent, the record includes Dr. Myers’s rebuttal to Miller’s response. This indicates Miller did at least oppose summary judgment. Based on Dr. Myers’s rebuttal and the nature of her replies, we glean that Miller argued: (1) he properly served process upon Dr. Myers in the original suit; thus, the statute of limitations remained tolled until he filed his Hinds County action, and (2) his initial pre-suit notice, required by Mississippi Code Annotated section 15-1-36(15) (Rev.2003), tolled the statute of limitations until he filed his Hinds County lawsuit. Additionally, based on Dr. Myers’s supplements to her motion for summary judgment, which address specific questions raised by the circuit judge during the summary-judgment hearing, we do not find Miller wholly confessed the summary-judgment motion. But we do find he apparently failed to respond to both supplements to the motion. Thus, our inquiry does not stop here. Instead, we proceed with our de novo review of the issues raised in Miller’s brief and during oral argument before this Court.
 

 II. Statute of Limitations
 

 ¶ 16. In Mississippi, medical-malpractice claims are governed by the limitations period in Mississippi Code Annotated section 15-1-36(1) (Rev.2003), which provides:
 

 No claim in tort may be brought ... for injuries ... arising out of the course of medical, surgical or other professional services unless it is filed within two (2) years from the date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered.
 

 It is undisputed that on March 24, 2003, Miller discovered his medical conditions that form the basis of his lawsuit. Thus, the limitations period commenced running that day. However, Miller argues the filing of the initial Rankin County action tolled the limitations period. On appeal, Miller attempts to circumvent the time bar based on a tolling argument. Specifically, he claims his service of process on Dr. Myers’s receptionist and his initial pre-suit notice to Dr. Myers sufficed to toll the statute of limitations.
 

 a. Service of Process, Tolling and the Savings Clause
 

 ¶ 17. Civil actions are commenced by filing a complaint with the court.
 
 See
 
 M.R.C.P. 3(a). But the filing of a complaint “only tolls [the statute of limitations] for the 120-day
 
 service period
 
 of Rule 4(h)[.]”
 
 Watters v. Stripling,
 
 675 So.2d 1242, 1244 (Miss.1996) (emphasis added). Unless process is properly served within the 120-day period of Rule 4(h), running of the limitations period automatically resumes.
 
 Triple “C” Transp., Inc. v. Dickens,
 
 870 So.2d 1195, 1200 (¶ 34) (Miss.2004) (citation omitted);
 
 see also Williams v. Fornett,
 
 906 So.2d 810, 812 (¶3) (Miss.Ct.App.2004).
 

 ¶ 18. In its order setting aside the default judgment and dismissing his initial action, the Rankin County circuit judge acknowledged that “Plaintiff [Miller] ha[d] confessed the Motion to Set Aside Entry of Default and Default Judgment[ ], in that Ann Myers, M.D., was not properly served with process.” The order of dismissal also reflected that Miller did not oppose dismissal. In addition to noting these concessions, we point out that while Mississippi Rule of Civil Procedure 4(d)(1)(A) provides for service on “an agent authorized by
 
 *653
 
 appointment,” nothing in the record establishes Dr. Myers’s receptionist had actual or apparent authority to accept process.
 

 ¶ 19. In
 
 Williams v. Kilgore,
 
 618 So.2d 51, 56 (1992), the supreme court held that a medical office manager’s acceptance of process on many previous occasions created apparent authority that the manager was an authorized agent for service of process. In
 
 Johnson v. Rao,
 
 952 So.2d 151, 155-56 (¶¶ 14-15) (Miss.2007), the supreme court distinguished
 
 Williams,
 
 as the facts did not support that Dr. Gutti Rao’s receptionist had authority to accept process. Likewise, in
 
 Cooley v. Brawner,
 
 881 So.2d 300, 302-03 (¶ 15) (Miss.Ct.App.2004), this Court affirmed the dismissal of a medical-malpractice complaint for lack of proper service by finding insufficient evidence that a “receptionist fully understood what was taking place, or the nature of the act.”
 

 ¶ 20. In this case, Miller wholly failed to support the record with information related to his alleged service on Dr. Myers’s receptionist. Therefore, we are unable to even delve into the facts to conduct such an inquiry. In the absence of sufficient factual information and in light of Miller’s confession to the initial tribunal that he failed to properly serve Dr. Myers, we must proceed as if service of process was insufficient.
 

 ¶21. In considering his primary tolling argument, we next turn to the savings clause in Mississippi Code Annotated section 15-1-69 (Rev.2003). We find that it too lends no help in salvaging Miller’s malpractice action. Section 15-1-69 provides:
 

 If in any action, duly commenced within the time allowed, the writ shall be abated, or the action otherwise avoided or defeated, by the death of any party thereto, or for any matter of form, or if, after verdict for the plaintiff, the judgment shall be arrested, or if a judgment for the plaintiff shall be reversed on appeal, the plaintiff may commence a new action for the same cause, at any time within one year after the abatement or other determination of the original suit, or after reversal of the judgment therein, and his executor or administrator may, in case of the plaintiffs death, commence such new action, within the said one year.
 

 At one time, much confusion surrounded whether the savings clause preserved or extended the lives of claims beyond the original statute of limitations. The supreme court in
 
 Owens v. Mai,
 
 891 So.2d 220, 222 (¶ 13) (Miss.2005), sought to resolve related uncertainties by holding that the “dismissal of a suit for failure to serve process is not a jurisdictional matter for purposes of the savings statute.” In
 
 Owens,
 
 the circuit court dismissed the plaintiffs first action for failure to properly serve process. The plaintiff initiated an identical second action before the first action had been dismissed, but after the limitations period had expired. Our supreme court held that the savings statute in section 15-1-69 “was not designed to extend the life of a cause of action beyond that of its original statute of limitation[s].”
 
 Id.
 
 at 223 (¶ 13). Further, the court explained: “When a case is dismissed because a defendant was not properly served within 120 days as mandated by M.R.C.P. 4(h), such a dismissal is not a ‘matter of form’ that comes within the intent of [section] 15-1-69.”
 
 Id. Owens
 
 instructs that: “While the filing of a complaint tolls the statute of limitations, if service is not made upon the defendant within 120 days as required by M.R.C.P. 4(h), the limitations period resumes running at the end of the 120 days.”
 
 Id.
 
 at 223 (¶ 14).
 

 ¶22. Here, the statute of limitations began to run on March 24, 2003, the date
 
 *654
 
 Miller was diagnosed with Guillian-Barre Syndrome and lupus. This same day he allegedly learned these conditions may have been caused by the arthritis drug prescribed by Dr. Myers. On August 31, 2004, Miller filed his first complaint in the Rankin County Circuit Court. This complaint initially tolled the limitation period for 120 days.
 
 Id. See also
 
 M.R.C.P. 4(h). After this 120-day period, on December 30, 2004, the limitations period resumed running, with a new end date of July 23, 2005. Miller filed the Hinds County Circuit Court action against Dr. Myers on December 13, 2005, nearly five months too late. Thus, we find Miller’s malpractice claim is untimely and that summary judgment was proper.
 

 b. Pre-Suit Notice Under Section 15-1-36
 

 ¶23. Miller alternatively argues that sending of his pre-suit notice to Dr. Myers, before he filed his initial complaint in Rankin County Circuit Court, tolled the two-year limitations period. Mississippi Code Annotated section 15-1-36(15) (Rev. 2003) provides:
 

 No action based upon the health care provider’s professional negligence may be begun unless the defendant has been given at least sixty (60) days’ prior written notice of the intention to begin the action. No particular form of notice is required, but it shall notify the defendant of the legal basis of the claim and the type of loss sustained, including with specificity the nature of the injuries suffered. If the notice is served within sixty (60) days prior to the expiration of the applicable statute of limitations, the time for the commencement of the action shall be extended sixty (60) days from the service of the notice for said health care providers and others. This subsection shall not be applicable with respect to any defendant whose name is unknown to the plaintiff at the time of filing the complaint and who is identified therein by a fictitious name.
 

 Miller is correct that “[t]he medical negligence statute does provide for a sixty-day tolling period once notice has been given.”
 
 Arceo v. Tolliver,
 
 19 So.3d 67, 73 (¶ 24) (Miss.2009) (citing Miss.Code Ann. § 15-1-36(15)). Indeed, the two-year medical-malpractice limitations period in Mississippi Code Annotated section 15-1-36(2) (Rev.2003) “effectively becomes a two-year and sixty[-]day statute of limitations” if the plaintiff serves notice of intent to file a claim within the limitation period.
 
 Scaggs v. GPCH-GP, Inc.,
 
 931 So.2d 1274, 1276 (¶ 9) (Miss.2006). However, the supreme court has emphasized “that statutory pre-suit-notice tolling provisions are contingent upon complying with the notice requirements.”
 
 Arceo,
 
 19 So.3d at 73 (¶ 24) (citations omitted).
 

 ¶ 24. We are unable to examine whether Miller complied with section 15-1-36(15) as the record is devoid of any written notice from Miller to Dr. Myers, prior to Miller filing the Rankin County action. This insufficiency again falls on Miller’s shoulders. Nevertheless, we find this omission immaterial. Even if Miller were spotted two years and sixty days from his March 24, 2003, discovery of his medical conditions, the limitations period would have expired well before December 13, 2005, the date he commenced the subsequent malpractice action in Hinds County. Further, the circuit judge granted summary judgment based on Miller’s failure to respond to her order to address Dr. Myers’s supplemental motions. These motions concerned the untimeliness of his second lawsuit, not his failure to adhere to the pre-suit strictures of section 15-1-36(15). Thus, we need not conduct an additional exhaustive savings clause analysis akin to that in
 
 Arceo.
 
 We do note
 
 *655
 
 though that “[b]y the plain terms of the savings statute, its grace does not extend to save a second suit,” like the subsequent Hinds County action.
 
 Arceo,
 
 19 So.3d at 76 (¶ 47). Pre-suit-notice issues aside, where a civil suit is dismissed for any reason and the statute of limitations has expired, dismissal with prejudice is warranted.
 
 Watters v. Stripling,
 
 675 So.2d 1242, 1242-44 (Miss.1996);
 
 Tolliver v. Mladineo,
 
 987 So.2d 989, 996 (¶ 18) (Miss.Ct.App.2007). Thus, we find this issue lacks merit.
 

 III. Summary-Judgment Hearing
 

 ¶ 25. Miller claims the circuit judge erred by not conducting a subsequent summary-judgment hearing. While an initial hearing was held, we point out there is no explicit or implicit right to a hearing under Rule 56(c),
 
 Croke,
 
 857 So.2d at 777-78 (¶ 10), though other rules may require a hearing.
 
 See Adams,
 
 831 So.2d at 1162-63 (¶ 24); M.R.C.P. 78. In
 
 Adams,
 
 the supreme court found that due to the finality of summary judgments, the trial court committed error by failing to hold a hearing.
 
 Adams,
 
 831 So.2d at 1163 (¶ 26). But the court ultimately determined, if no resolved issues of material fact exist, the error is harmless.
 
 Id.
 

 ¶26. Correspondence issues aside, the crux of Miller’s argument is centered on his claim that he was denied a hearing, albeit a subsequent one. Again, we note the trial court did conduct a summary-judgment hearing on August 15, 2006. And during this hearing Miller voiced his objections to summary judgment, apparently raising the issues addressed by Dr. Myers in her supplemental filings. Further, we are aware of no mandate that a second hearing be granted. Most importantly, Miller presents no additional material factual evidence that if argued at a subsequent hearing would raise a legitimate issue about his untimely second lawsuit. Indeed, when pressed during oral argument about what he would offer at a second hearing, he proposed nothing new.
 

 ¶27. We therefore find, based on the circumstances of this case, that any error' relating to the failure to conduct a second summary-judgment hearing was not reversible error. Accordingly, we affirm the grant of summary judgment.
 

 ¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. CARLTON, J., NOT PARTICIPATING.