259 So.2d 476 (1972)
Leroy GARRETT
v.
Charlene WADE.
No. 46557.
Supreme Court of Mississippi.
March 13, 1972.
Mitchell, Rogers & Eskridge, Tupelo, for appellant.
*477 Robert W. Elliott, Ripley, Murray L. Williams, Water Valley, for appellee.
BRADY, Justice:
This is an appeal from a judgment in the sum of $6,300 rendered in the Circuit Court of Union County, Mississippi, against the appellant, Leroy Garrett, and in favor of the appellee, Miss Charlene Wade. The record discloses these pertinent facts.
On January 21, 1966, the appellant and appellee were employed as tellers of the Bank of New Albany. The appellant was also a member of the board of directors of said bank. It was one of the duties of Miss Wade after regular banking hours to sort, assemble and prepare for transmission to foreign banks all checks that had been received that day in the bank's transactions.
Along the west side of the lobby were four tellers' cages that extended approximately forty feet in length to the south. Mr. Leroy Garrett, appellant, occupied the first teller's cage, Mr. R.A. Collins, the second teller's cage, and Mrs. Juanita Adair, the third teller's cage. The appellee worked in the fourth teller's cage. Behind these four tellers' cages was a table approximately twenty-four to thirty feet in length, the north end of which was behind the first teller's cage.
It was customary for the tellers to place their checks on the long table so that Miss Wade could collect, sort, stamp and prepare the checks to be mailed. On the afternoon of January 21, Miss Wade had picked up what she believed were all of the checks from the table and had almost completed preparing them for mailing, when someone told her that there were additional checks near the north end of the table. These checks had been placed there by the appellant, Mr. Garrett. An argument arose between the appellant and Miss Wade as to when the checks had been placed there. The appellant asserted that the checks had been there for some time, while Miss Wade claimed that they were not there when she gathered the checks. When this argument started, the appellant was in the first teller's cage and the appellee was either in or near her cage toward the rear of the building. As the argument continued and gained intensity, appellant left his cage and moved toward the rear of the building and the appellee likewise left her cage and walked to the table at or near the third teller's cage.
Though in dispute, the record discloses that the following conversation and actions took place. Appellee asserts that she said: "Now, Leroy, those damn checks were not there and if you say they were you are lying." In response appellant said: "Nobody calls me a liar, nobody." She testified that he then "hauled off and hit" her and that after he had struck her she said: "I still say you are," and that he then drew back his hand and said: "I'll knock your damn head off." The appellee states that at this point appellant was seized by Mr. R.A. Collins and was restrained. The appellee testified that the blow was so hard that her glasses were knocked off and her nose began to bleed. She claims that she was struck on the left side of her face, on the cheek and ear. As an adverse witness, the appellant admitted that there was an argument over the checks, but stated that Miss Wade called him a damn liar at least three times. The first time was when he was in his cage, the second time when he was going to get the checks to give to her, and finally when she was hovering over him while he was attempting to work on some checks. He claims that he merely raised his hand to get her to move back so he could continue his work and that his hand just accidentally came in contact with Miss Wade's face. He admits, however, that, "Well, it provoked me and made me angry." In addition to this, the record reveals the following question and answer:
Q. Don't you know the truth about the matter is that you hit her so hard that you knocked her glasses off?

*478 A. No, sir. They didn't come off at the lick.
He stated that her glasses fell on the floor because she was shaking her head "and shakes her glasses off on the floor."
By deposition, Dr. Murry testified that the left ear of the appellee on his last examination, and there was a loss of 8% in the right ear of the appellee at that time. there was a loss of hearing of 20.4% in Appellee pled in her declaration that she has sustained much physical and mental anguish because of appellant's striking her on her face; that she has had to make repeated trips to doctors in an effort to regain her physical health and strength. She also pled in her declaration that the blow to her head and ear started a ringing which still continues and causes her great discomfort; that her hearing has been damaged and decreased, affecting her ability to work, and has impaired her ability to make a living. The record reveals that the appellee testified she suffered some discomfort, pain and suffering as a result of appellant's blow to her face and that she has lost some sense of equilibrium. She testified she is unable to hear people who talk to her and that it is humiliating to ask them to repeat their conversation.
The jury was justified in concluding, as it did, that the appellant struck the appellee. Not only the appellee but also Mr. H.P. Dillard, President of the bank, and Mr. J.L. Spence, an employee of the bank, testified that the appellant struck the appellee with the palm of his right hand. While the appellant denied that he drew back his right hand to strike her again and denies saying, "I'll knock your damn head off," Mr. H.P. Dillard testified that Mr. Collins "grabbed his (appellant's) right arm under here," thus restraining him. Mrs. Marjorie Simmons stated that she heard what she supposed was a lick and that she saw blood on a Kleenex which the appellee had and that the blood came from the appellee's nose.
The record reflects that the appellee was a frail lady who had worked for the bank for approximately twenty-six years. She had been confined in the hospital in Tupelo for ten days with a recurrence of rheumatic fever and had been out of the hospital for only two weeks when the incident occurred. The appellant, who admits that he was a robust, vigorous man, had worked in the bank for over twenty years. Any additional facts essential to the disposition of this case will be discussed in the treatment of the errors assigned which we now consider.
Appellant assigns seven errors which can be combined into three since errors 2, 3, 4, 5, and 6 relate to instructions which were granted the appellee. These errors will be considered jointly. The other errors which merit our consideration are as follows:
1. The Circuit Court erred in overruling Appellant's exception to and motion to suppress deposition of Dr. C.M. Murry and in admitting said deposition in evidence.
2. The verdict of the jury is excessive and is against the overwhelming weight of the evidence.
The basic error which the appellant assigns is error No. 1, which is as follows:
The Circuit Court erred in overruling Appellant's exception to and motion to suppress deposition of Dr. C.M. Murry and in admitting said deposition in evidence.
The circuit court did not err in overruling appellant's exception to and motion to suppress en toto the deposition of Dr. C.M. Murry and in admitting said deposition in evidence as is hereinafter set forth. We reach the conclusion that this assignment of error is well taken as to his statement that, "It is my opinion that at least a part of this loss of hearing in the left ear, which I think is now permanent, might be attributed to acoustic trauma *479 which can be a loud noise or can be a blunt blow to the ear or the side of the head." (Emphasis added.) The doctor's testimony fails to supply the essential elements to make this evidence admissible as to appellee's loss of hearing caused by the blow.
This Court had consistently held that medical testimony is not probative unless it is in the terms of probabilities and not possibilities. In Scott County Co-Operative v. Brown, 187 So.2d 321 (Miss. 1966), we held that the doctor's statement that he was of the opinion that the mental condition "could have been caused" by the accident was insufficient to justify submitting to the jury the question of causal connection between the malady and the accident. This Court has ruled to the same effect in Morrell & Company v. Shultz, 208 So.2d 909 (Miss. 1968); Kramer Service, Inc. v. Wilkins, 184 Miss. 483, 186 So. 625 (1939); Mutual Benefit Health & Accident Association v. Johnson, 186 So. 297 (Miss. 1939); Teche Lines, Inc. v. Bounds, 182 Miss. 638, 179 So. 747 (1938); Berryhill v. Nichols, 171 Miss. 769, 158 So. 470 (1935).
The testimony of Dr. Murry as reflected in his deposition based upon the results of seven examinations he had made of the appellee from March 1966 to January 19, 1967, is admissible. The fact that in five of these examinations he tested her loss of hearing is likewise admissible. The basic reason why this testimony is admissible is simply that regardless of how the appellee may have lost her hearing she is entitled to show what loss of hearing she has sustained. She still had the burden of showing the causal connection between her loss of hearing and the blow the appellant inflicted upon her. This burden she met by her testimony as to loss of hearing following the blow. Mr. H.P. Dillard, the bank's president, and Mr. J.L. Spence substantiate her testimony that the appellant inflicted the blow. The verdict of the jury insofar as the liability of the appellant is concerned is affirmed because the overwhelming weight of the evidence conclusively establishes the fact that the appellant without excuse or justification delivered the injurious blow.
Several instructions granted the appellee are erroneous. The court should not have granted the appellee its Instruction No. 5. This instruction is erroneous because the declaration of the appellee did not charge that she suffered on account of mortification, insult, indignities, loss of honor, and sense of shame placed upon her by the appellant nor does the proof offered by the appellee justify the granting of this instruction in this regard. She testified that she was humiliated because she had to ask people to repeat what they had said and this made her a little bit shy. Furthermore, this instruction is erroneous because the jury is instructed to consider the allegations relating to insult and indignity as well as the assault committed upon the appellee as alleged in the declaration. Since the appellee did not appeal from the court's granting the appellant an instruction denying punitive damages, we do not reach that question. I.C.R.R. v. Gibson, 219 Miss. 815, 70 So.2d 52 (1954); and Southland Broadcasting Co. v. Tracy, 210 Miss. 836, 50 So.2d 572 (1951).
Instruction No. 6 granted the appellee again instructs the jury to review the allegations of the declaration in considering their verdict. This instruction is erroneous also for the reason that it permits the jury to award damages for loss of power and ability to earn money by her labors. The record fails to disclose any diminution of earning capacity to justify the granting of this instruction. Mills v. Balius, 254 Miss. 353, 180 So.2d 914 (1965); and Meaut v. Langlinais, 240 Miss. 242, 126 So.2d 866 (1961).
For the foregoing reason, Instruction No. 7 should not have been granted.
These erroneous instructions do not give the jury a fair and accurate statement of *480 the applicable law and could have misled the jury.
It is obvious that the appellee's instructions denied the appellant a fair and impartial trial in the court below insofar as damages are concerned. We do not have to consider the last error assigned by the appellant, that the verdict of the jury is excessive and is against the overwhelming weight of the evidence, since we must reverse this case as to damages on the errors hereinabove noted. We point, out however, that the appellee failed to prove by substantial evidence that her medical expenses and costs were occasioned solely by the blow. There is no proof that there was a causal connection between her loss of hearing and the blow except her own testimony, due to the fact that the doctor stated the blow might have caused her loss of hearing. There is evidence which she offered as to her pain, suffering and some mental anguish.
In conclusion, we have perhaps a good illustration of the clashes of personality which often occur between people who are confined in small areas. Obviously, the appellee was not cognizant of, or disregarded, the biblical truth that "a soft answer turneth away wrath but grievous words stir up anger." We like to think that just as MacBeth in despair gazed upon the imaginary blood on his hand, so does the appellant stare at his hand and fingers and ruefully ponder if the sting and tingle thereof occasioned by the blow which he gave the frail appellee will ever cease.
For the above noted reasons, this cause is affirmed as to liability and remanded for the determination of damages only. It is hoped that on a retrial thereof the errors committed can be avoided.
Affirmed as to liability and reversed and remanded as to damages.
GILLESPIE, C.J., and JONES, INZER and SUGG, JJ., concur.