# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 3, 2008

Charles R. Fulbruge III
Clerk

No. 06-60912
Summary Calendar

TED L. PATTERSON,

Plaintiff–Appellant–Cross-Appellee,

v.

RADIOSHACK CORPORATION,

Defendant–Appellee,

DUFFY CONSTRUCTION COMPANY, INC.,

Defendant–Appellee–Cross-Appellant.

Appeals from the United States District Court
for the Northern District of Mississippi
USDC No. 1:04-CV-297

Before SMITH, WIENER, and OWEN, Circuit Judges.

PER CURIAM:[*]

Ted L. Patterson appeals from a grant of summary judgment in favor of appellees Radioshack Corporation and Duffy Construction Company, Inc. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I

Patterson brought this action seeking $3 million in damages under a theory of premises liability for a fall he sustained at Radioshack's store in a Tupelo, Mississippi mall. At the time of the accident, Duffy employees were remodeling a portion of the store and working on the store's ceiling. Patterson alleges that he either tripped over a spool of coaxial cable that had fallen through the ceiling or the spool of cable fell through the ceiling onto him, causing him to fall. When he fell, his head struck a loud speaker on display for sale, and then his head hit the floor of the store.

Patterson asserts that before he left the mall, he became nauseated, vomited, developed a migraine headache, and became sensitive to light. Because of these symptoms, he visited a hospital in Pontotoc, Mississippi, as well as his family physician. At some point, his family physician referred him to Dr. McDonald, a neurosurgeon, and six months after the fall at Radioshack, Dr. McDonald diagnosed Patterson with a fractured neck, a burst disc, or both. Dr. McDonald performed surgery, during which he discovered a tear in Patterson's spinal dura, which Dr. McDonald partially repaired. Patterson's symptoms improved, but did not entirely subside, after this tear was partially repaired. Patterson also saw Dr. George Hammitt for treatment of pain following the fall at Radioshack.

Patterson brought this suit to recover for past and future pain and suffering, past and future medical bills, loss of enjoyment of life, emotional distress, and permanent injury. Radioshack filed a motion for summary judgment, which Duffy joined, contending that there was no expert evidence that the fall on its premises, as opposed to prior injuries and pre-existing medical conditions suffered by Patterson, caused the tear in Patterson's spine, which Patterson's experts had opined was the underlying cause of his symptoms. Duffy also filed a motion to dismiss based on a statute of limitations defense.

In his deposition, Patterson testified that he had been involved in several accidents aside from the Radioshack incident. About ten years before the Radioshack fall, Patterson ran his truck into a tree in his front yard. About nine years before the Radioshack fall, Patterson's vehicle was "run over by a log truck." The truck—loaded with 63,000 pounds of logs—"crushed [Patterson's] Cadillac up into a piece of a beer can." Patterson also had a history of degenerative disc disease treatment for which included surgery to his spine performed by Dr. McDonald to remove bone spurs four years prior to the Radioshack incident.

In the district court, Patterson designated two treating physicians, Dr. McDonald and Dr. Hammitt, both of whom testified in their respective depositions that they could not offer an opinion that the fall on Radioshack's premises caused the tear in Patterson's spinal dura and his resulting symptoms. Appellees designated Dr. Thomas Riley Jones—an expert specializing in orthopaedic medicine—as their expert who testified that the fall did not cause the tear of Patterson's spinal dura.

The district court granted Radioshack's and Duffy's summary judgment motion finding that no genuine issue of material fact existed with regard to the causation of Patterson's injuries. The district court did not rule on Duffy's separate motion in which it urged limitations as a bar.

Patterson timely appealed, arguing that the district court incorrectly applied the summary judgment standard to his evidence. Patterson does not argue that he is entitled to pain and suffering for de minimis injuries. He maintains that he is entitled to $3 million for past and future medical expenses and other expenses related to significant and permanent injury. Duffy cross-appealed to preserve its statute of limitations defense.

II

We review a district court's grant of summary judgment de novo, applying the same standard as the trial court.[1] Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, the record reflects that no genuine issue of any material fact exists, and the moving party is entitled to judgment as a matter of law.[2] To survive a motion for summary judgment, the nonmovant must come forward with specific facts showing that there is a genuine issue of material fact.[3] We apply Mississippi law to this diversity action.

Patterson's principal argument on appeal is that his testimony combined with that of Dr. McDonald and Dr. Hammit excludes every possible cause of the hole in Patterson's dura except for the Radioshack incident. Specifically, Patterson testified that he began to experience severe symptoms immediately after the Radioshack fall, he did not experience these symptoms prior to the fall, and Dr. McDonald testified that a tear in the dura would produce symptoms consistent with those experienced by Patterson. Patterson argues that in a 1997 surgery (four years before the fall on Radioshack's premises), Dr. McDonald observed no indications of a tear in Patterson's spinal dura. However, Dr. McDonald stated that a tear in Patterson's dura would not have been seen in the 1997 surgery because the surgery was on the opposite side from the hole. Dr. McDonald performed the surgery with a posterior approach to Patterson's neck. Patterson acknowledges that no expert has opined that the fall probably caused the tear in his dura, but he asserts that for purposes of summary judgment, a reasonable inference could be drawn that the fall did cause the tear.

---

[1] Urbano v. Continental Airlines, Inc., 138 F.3d 204, 205 (5th Cir. 1998).

[2] Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); see also FED. R. CIV. P. 56(c).

[3] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

To prove the element of proximate cause under Mississippi tort law, a plaintiff must produce evidence "which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough."[4] In the absence of "direct evidence," it must be possible to draw a "reasonable inference" that the allegedly negligent act "proximately contributed" to the injury.[5]

The Mississippi Supreme Court "has consistently held that medical testimony is not probative unless it is in the terms of probabilities and not possibilities."[6] In Scott County Co-Op v. Brown, the Mississippi Supreme Court held that it was error to admit testimony that a mental condition could have been caused by the accident at issue because the testimony showed "merely a possibility" of causation.[7] As noted by the Mississippi Supreme Court in Garrett, the court has consistently ruled that evidence that an accident could have caused a malady "was insufficient to justify submitting to the jury the question of causal connection between the malady and the accident."[8] Medical testimony that only demonstrates a mere possibility of causation, but fails to reasonably establish that a defendant's actions more likely than not were the cause of the plaintiff's injuries, is legally insufficient to prove cause in fact.

---

[4] Burnham v. Tabb, 508 So. 2d 1072, 1074 (Miss. 1987) (citing W. KEETON, PROSSER & KEETON ON TORTS, § 41 (5th ed. 1984)).

[5] Id.(citing Tombigbee Elec. Power v. Gandy, 62 So. 2d 567 (Miss. 1953)).

[6] Deas v. Andrews, 411 So. 2d 1286, 1293 (Miss. 1982) (quoting Garrett v. Wade, 259 So. 2d 476, 479 (Miss. 1972)).

[7] 187 So. 2d 321, 325-26 (Miss. 1966).

[8] Garrett, 259 So. 2d at 479 (citing Scott County Co-Op, 187 So. 2d at 325-26; John Morrell & Co. v. Shultz, 208 So. 2d 906 (Miss. 1968); Kramer Serv., Inc. v. Wilkins, 186 So. 625 (Miss. 1939); Mut. Benefit Health & Accident Assoc. v. Johnson, 186 So. 297 (Miss. 1939); Teche Lines, Inc. v. Bounds, 179 So. 747 (Miss. 1938); and Berryhill v. Nichols, 158 So. 470 (Miss. 1935)).

In this case, the district court concluded that because neither of Patterson's treating physicians had offered testimony in terms of medical probability, the evidence was insufficient to allow a jury to conclude that Patterson's fall at Radioshack had caused his medical problems. Accordingly, the district court held that the appellees were entitled to a judgment as a matter of law.

Patterson's treating physicians conceded that they cannot state their opinion in terms of medical probability regarding the cause of the hole in Patterson's dura, which they regard as the cause of Patterson's injuries. During Dr. McDonald's deposition he was asked whether he was "offering an opinion today to a reasonable degree of medical probability what the cause of the hole in Patterson's dura was." Dr. McDonald answered, "I am not." Dr. McDonald also would not rule out to a reasonable degree of medical probability that the hole in Patterson's dura was caused by erosion or some problem other than the Radioshack incident. In fact, Dr. McDonald testified that when bone spurs have been there a long time and have "attach[ed] themselves" to the dura, they can be "extremely hard to remove without a tear in the dura." Nor could Dr. McDonald offer an explanation for the hole in the dura and testified that spontaneous leaks of spinal fluid are "not unheard of." Neither could Dr. Hammitt state with a reasonable degree of medical certainty or probability as to the cause of Patterson's pain. Dr. Hammitt also noted that Patterson suffers from disc degeneration, which is causing a narrowing of Patterson's spinal canal.

Patterson's testimony is not sufficient to establish a question of fact under Mississippi law. Patterson, who is not a medical expert, cannot simply offer evidence that because injuries arose after an act of negligence that act of negligence is the cause in fact for those injuries.[9]

---

[9] See Jackson v. Swinney, 140 So. 2d 555, 556-57 (Miss. 1962) (testimony of post hoc ergo propter hoc, without more, is insufficient to create jury issue on cause in fact).

Patterson further argues that Dr. Hammitt testified that Patterson could not suffer a dural tear as a result of a bone spur absent some sort of physical trauma. However, the record does not bear this out. Dr. Hammitt testified that he did not consider the cause of Patterson's injuries when treating him for pain. Instead, he relied on Patterson's account of the origination of his injuries.

Moreover, appellees' expert, Dr. Jones, stated in an affidavit that Patterson's spine condition was more "chronic and spondylolytic" in nature such that—in his opinion to a reasonable degree of medical certainty—the accident at Radioshack did not cause any structural changes to Patterson's spine, the tear in his dura, or his need for subsequent surgery. We have stated:

> Where the facts proven show that there are several probable causes of an injury, for one or more of which the defendant was not responsible, and it is just as reasonable and probable that the injury was the result of one cause or the other, plaintiff cannot have a recovery, since he has failed to prove that the negligence of the defendant caused the injury.[10]

As noted by the district court, the depositions and reports of the expert and treating physicians indicate that some of the causes of Patterson's injuries, other than his fall in Radioshack's store, rise to the level of "probability" while the Radioshack accident only rises to the level of "possibility."

Patterson notes that in all of the Mississippi decisions cited by the district court or the appellees, the plaintiff had proceeded to trial.[11] Therefore, he argues, summary judgment is inappropriate. However, none of those decisions considered summary judgment in any context, much less the standard to survive

---

[10] Dreijer v. Girod Motor Co., 294 F.2d 549, 556 (5th Cir. 1961) (quotations and citations omitted) (reversing trial court's findings on issue of causation in an admiralty law context).

[11] See Jackson, 140 So. 2d 555, 555; Dennis v. Prisock, 181 So. 2d 125, 126 (Miss. 1965); Scott County Co-Op, 187 So. 2d at 322; Garrett, 259 So. 2d at 477; Deas, 411 So. 2d at 1287; Black v. Food Lion, Inc., 171 F.3d 308, 309 (5th Cir. 1999); Kirk v. K-Mart Corp., 838 So. 2d 1007, 1010 (Miss. Ct. App. 2003); and Sutherlands Lumber & Home Ctr., Inc. v. Whittington, 878 So. 2d 80, 81 (Miss. Ct. App. 2003).

summary judgment. Once the appellees raised the issue of causation in a motion for summary judgment, Patterson was required to come forward with some evidence that a cause of his injuries was, in reasonable medical probability, his fall at Radioshack's store. His contention that the "possibility" that the Radioshack accident caused or contributed to his maladies creates a fact question for the jury finds no support in Mississippi law. Accordingly, the district court did not err in finding that no genuine issue of material fact exists in this case. Because we affirm the district court's finding of no material disputed fact, we do not reach Duffy's statute of limitations argument.

*     *     *

For the foregoing reasons, the judgment of the district court is AFFIRMED.